EMMA A. MORSE, administratrix, *vs.* GLENDON COMPANY.

Suffolk.  March 29, 1877. — Aug. 29, 1878.  AMES & LORD, JJ., absent.

In an action against a corporation for personal injuries occasioned to an employee, there was evidence that the defendant had a machine for drying lumber by steam pressure, consisting of a cylinder made of boiler iron, open at one end, to which was attached a rim and a door to be shut when in use; that the cylinder was made to order, but the rim and the door were purchased of a manufacturer; that the door when closed was held firmly in place by an arrangement of levers, screws, bolts and eye bolts; that on the outer edge of the rim, under the edge of the door when shut, was a groove to be filled by a gasket to make the door steam-tight; that the president of the corporation directed its engineer, who had charge of all the engines and machinery, to set up the machine and put it in working order; that the rim with the door attached was properly riveted to the open end of the cylinder, and a gasket was procured and placed in position; and the machine was then examined and tested by official inspectors of steam-boilers, and subjected to a pressure of one hundred pounds to the square inch, and certified to be sound and fit for use, and safe at a working pressure of sixty-six pounds to the square inch; that the engineer found that the gasket was too thin, and, under the test of the inspectors, the cylinder leaked; that he procured another gasket, and was engaged in fitting it in its place, when the employee joined him, and was told that he might take hold and help on the boiler, and he did so; that the second gasket was much thicker than the first, and there was difficulty in closing the door so that no steam would escape; that the door was shut twice as closely as possible, but each time, with a pressure of thirty-five pounds of steam, there was a leak; that the engineer then

found that there was an unevenness where the ends of the rubber of the gasket lapped together, and made a new adjustment, closed the door, and let the steam on; that at a pressure of twenty pounds there was a slight leak; that the engineer started to let off the steam, when there was an explosion throwing open the door, and causing the injuries complained of. *Held*, that there was no evidence of negligence on the part of the defendant, either in the selection of the machine, or of the servant charged with the duty of putting it in order for use; and that the action could not be maintained.

TORT for personal injuries occasioned to the plaintiff's intestate, John H. Morse, while in the employ of the defendant corporation. Trial in this court, before *Lord*, J., who reported the case for the consideration of the full court. If, upon the evidence, it would be competent for the jury to find for the plaintiff, the case was to stand for trial; otherwise, the plaintiff was to become nonsuit. The nature of the evidence appears in the opinion.

*E. O. Shepard*, for the plaintiff.

*E. M. Johnson*, for the defendant.

ENDICOTT, J. In our view of this case the material questions are, whether there was any evidence offered by the plaintiff of negligence on the part of the defendant in the selection of the machine, or of the servant charged with the duty of putting it in order for use.

The machine was a boiler for drying lumber by steam pressure. It consisted of a cylinder made of boiler iron, twenty-four feet long and five feet in diameter, open at one end, to which was attached a rim and a door to be shut when in use. The cylinder was made in Boston; the rim and the door connected with it were purchased from a manufacturer in the West. The door when closed was held firmly in its place by an arrangement of levers, screws, bolts and eye bolts, a particular description of which and their operation is not important. On the outer edge of the rim, under the edge of the door when shut, was a groove an inch wide, and an eighth of an inch deep, to be filled by a gasket or other packing to make the door steam-tight. No gasket came from the West with the door.

The president of the defendant company directed the engineer, Odell, who had charge of all the engines and machinery in the yard, to set up the machine and put it in working order. The cylinder was placed upon a proper foundation, and the rim with

the door attached was properly riveted to the open end. A gasket was procured by Odell and placed in position. The machine was then examined and tested by the United States inspectors of steam-boilers, and, with the doors closed, was subjected to a hydrostatic pressure of one hundred pounds to the square inch; and they gave a certificate that it was sound and fit for use, and would be safe with proper care for one year at a working pressure by steam of sixty-six pounds to the square inch. It was found by Odell that the gasket was too thin, that under the test of the inspectors it leaked, and there was some evidence that it was also tested by subjection to steam pressure, and leaked. He procured another gasket which was received the day before the accident. On the morning of the next day, he was engaged in fitting the new gasket in its place with a view of making the door tight, when the plaintiff's intestate, Morse, joined him. It does not appear by the report, in terms, in what capacity Morse was employed by the defendant; but it is clearly to be inferred that he was a machinist, accustomed to work upon and acquainted with machinery, though there was no evidence that he had any particular knowledge of the mechanism of this machine. Odell testified that while he was at work "Morse came along from the repair shop and said he was out of a job and asked me what he should do next. He was under my orders. I told him I was surprised that he had finished his job so soon; I expected it would take him all the forenoon. I told him he might take hold and help me on the boiler." He did so. This gasket was much thicker than the first, and the difficulty experienced was in closing the door, so that no steam would escape. The door was shut twice by means of the screws as closely as possible, but each time with a pressure of thirty-five pounds of steam there was a leak. It was then found by Odell that there was an unevenness where the ends of the rubber of the gasket lapped together; he then made a new adjustment, the door was again closed and the steam let on; at a pressure of twenty pounds there was a slight leak. Odell said to Morse, "It is leaking again," and started to let off the steam. Morse was then sitting in front and a short distance from the door. Odell had passed about five feet along the side of the cylinder when there was an explosion throwing open the door

Morse was found upon the door, and in such a position as rendered it certain that in the interval he had left his seat, and at the time of the explosion was turning or attempting to turn the lever or wheel attached to the bolts. It does not appear that he was directed to do this by Odell or any other person; it was his voluntary act, done while Odell had gone to let off the steam. He was badly wounded and rendered insensible. How far this act of Morse, not directed by Odell, who had charge of the work, and under whose control he was, can be treated as a careless or unauthorized meddling with the machine, or how far his act contributed to the result, we do not propose to consider, as there are other grounds for the decision of the case.

The alleged injury resulted to the plaintiff's intestate while engaged with the defendant's foreman in putting the machinery in proper working order. They were not operating it, but experimenting with a gasket to make the door tight. That the nature and object of the work in which they were engaged was known to Morse sufficiently appears from the evidence. And it nowhere appears in the evidence, and was not claimed in the argument, that he was not a competent and intelligent workman, or that it was not within the general scope of the employment of Morse and Odell and a part of their duty as machinists to put all machinery in the yard, or such new machines as might be brought there for use, into proper working order.

The only ground therefore on which the defendant can be held liable is, that it was negligent in failing to exercise reasonable and proper care and diligence in procuring the machine or in the selection of Odell, under whom Morse was acting. And on these points there is no evidence whatever of any negligence. It does not appear that the defendant did not use due diligence in purchasing the machine; or had any reason to suppose that the machine was itself unsafe, or could not be put in proper working order by its machinists. Nor was there any evidence that the defendant failed in any respect to comply with the law, and have it properly tested; on the contrary, it was tested by the proper authorities and pronounced to be sound and fit for use, and to be safe at a pressure much greater than it was subjected to at the time they attempted to adjust the gasket.

Nor was there any evidence of negligence or want of proper care in the selection of Odell, or that he was an unfit or incompetent person; so far as his qualifications were disclosed by the evidence, he appears to have been thoroughly competent for the work he undertook to do.

The scientific and expert testimony was wholly unimportant and aside from the question involved in this controversy, which was, Did the defendant have knowledge or reason to believe that the machine was unsafe? On this question there was absolutely no evidence.

The cases relied on by the plaintiff do not sustain her position, and are not in conflict with this conclusion. In *Cayzer* v. *Taylor*, 10 Gray, 274, a fusible plug required by law was not attached to the boiler, and the defendant's negligence was established. In *Snow* v. *Housatonic Railroad*, 8 Allen, 441, the injury was caused by a want of repair in the roadbed of the corporation; and in *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282, it was held that a master might be liable to a servant for the decayed and unsafe condition of the floor of his shop. In *Gilman* v. *Eastern Railroad*, 10 Allen, 233, and 13 Allen, 433, the corporation was liable because due care was not used in the selection of the servant whose negligence caused the injury. In *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572, the plaintiff was a boy incapable of understanding the danger to which he was exposed by the machinery, and incapable of performing his work there in safety; and the defendant, knowing the danger, was held guilty of negligence in not informing him in regard to his work and the danger attending it, so as to enable him with proper care to avoid it. *O'Connor* v. *Adams*, 120 Mass. 427, was decided upon a similar gronnd. In *Ford* v. *Fitchburg Railroad*, 110 Mass. 240, it was held that, in operating a railroad, the furnishing a suitable locomotive engine was the duty of the company, which it could not avoid by delegating to servants; and in *Arkerson* v. *Dennison*, 117 Mass. 407, the case was sent to the jury upon the ground that there was evidence tending to show that the defendant had not entrusted the preparation of a staging, by the fall of which the plaintiff was injured, to another, but had retained the charge and direction of it himself, and was bound to exercise some care in regard to it, which he neglected

to do. The case of *Seaver* v. *Boston & Maine Railroad*, 14 Gray, 466, merely asserts the general proposition that a corporation is not liable to a servant for an injury caused by the negligence of a fellow-servant ; and also that a hidden defect in an axle, the failure to discover which, if discoverable, was occasioned by the negligence of servants, does not render the corporation liable to another servant injured thereby. In *Walsh* v. *Peet Valve Co.* 110 Mass. 23, the plaintiff was at work upon a newly invented machine, which he had never seen before, in the presence of his employers, under whose direction he was acting ; and it was held that if he did not know it was dangerous to move it, as they directed him to do, and they did know or ought to have known it, and gave him no warning, he could maintain an action for an injury caused thereby.  *Plaintiff nonsuit.*