SARAH F. WALKER, administratrix, *vs.* BOSTON & MAINE
RAILROAD.
MARY L. MILLER, administratrix, *vs.* SAME.

Suffolk. November 14. — 15, 1879. LORD, J., did not sit. SOULE, J., absent.

Through the negligence of a competent road-master of a railroad corporation, a
switch was misplaced, and a locomotive engine and a train of cars were turned
upon a side track, the sleepers of which were rotten; the engine and train were
thrown from the track, and the engineer and fireman of the engine were injured.
*Held,* that they were fellow-servants with the road-master, and could not main-
tain an action against the corporation.

TWO ACTIONS OF TORT, each for a personal injury occasioned
to the plaintiff's intestate by the alleged negligence of the de-
fendant. Trial in this court, before *Ames,* J., who reported the
cases for the determination of the full court in substance as
follows:

On the day of the accident, a freight train consisting of forty-
seven loaded cars, drawn by two engines, started from the
defendant's station in Boston in the direction of Andover.
Charles C. Walker, the plaintiff's intestate in the first case, and
Carl Miller, the plaintiff's intestate in the second case, were the
engineer and fireman respectively of the second engine. On
arriving at Ballardvale, the train, in consequence of the dis-
placement of a switch, was suddenly turned off upon a side
track, upon which two other cars were standing, and, although
the forward engine was not thrown from the track, there was a
general wreck of the train, the cars were piled together, and
great damage was done to the train and to the road-bed. In
consequence of this accident, Walker and Miller were so badly
injured that they died, Walker in a few minutes, and Miller in
about one hour.

Edward Marland testified, for the plaintiffs, that he was the
defendant's station agent at Ballardvale, and, as such, sold tickets
and had charge of the station; that at the time of the accident
he was in Boston; that, when he left Ballardvale, the switches
were all right; that, by the rules of the corporation, all station
agents have charge of the switches, tracks, sidings, &c. at their
stations, and would be held responsible for the security and posi-

tion of the switches; that he had a copy of these rules for his direction, and was responsible accordingly; that he was in Boston on that day on the business of the defendant, and went to see their freight auditor in the course of his duty; that he had the consent of the defendant's general superintendent to go to Boston, but not at any particular time; that he went perhaps once or twice a month, sometimes on the defendant's business, and sometimes on his own; that when he went, he left his wife in charge of the station; and that he was the postmaster at Ballardvale, keeping the post-office at the station. On cross-examination, he testified that when he left on the day in question he notified the flagman; that the amount of business at the post-office was very small, and did not in the least interfere with his duties as station agent; that he did not think the defendant was aware of his absence in Boston on all occasions, and could not say that he ever went by their orders; that when he said he went there by their consent, he meant only that he went to their office and reported, and no objection was made; that there were a great many switchmen, conductors, road-masters and section bosses in the defendant's employ, and many of the persons employed by the defendant were entrusted with keys to the switches; and that these persons, William Horan being one of them, had been long accustomed, in the discharge of their duties and in the regular management of the road, to lock, unlock, open and move the switches, without objection from the principal officers of the company, and without permission from the witness, while the rule above described was in force.

William Horan testified that he had charge of a section of the road, of about two miles and a quarter in length, and that it was his duty to keep the road-bed in proper condition; that he was the head man of his section, and had two men under him; that, on the day of the accident, and a short time before it occurred, he with his two men came to that station on a hand-car, with three rails to be used in repairs at a crossing; that he shifted the switch in order to make it more convenient and easy to unload the hand-car, and to leave the rails near where they were to be used; that, after the hand-car had passed the switch, he noticed that a bolt in the connecting-rod was not in proper condition, and he accordingly replaced it by another bolt; and

that he then went to his dinner, leaving the switch in the position in which it was at the time of the accident. On cross-examination, he testified that, all the time he had worked on the road, namely, twelve years, he had had a key which unlocked all the switches in his section, the switch in question being one, and that he had always been accustomed to open and close them as his business required; that finding the bolt on the ground, he went to a car-house and obtained tools and materials for repair, and put the switch in order; that he left it open to the side track and went away to dinner; and that by reason of his mistake in thus leaving the switch, the train ran off upon the siding.

There was evidence tending to show that the sleepers on the side track were decayed and rotten, so that the spikes could easily be pulled out by hand; that Walker's engine was stuck in the ground, the rails under and behind it and behind the tender of the foremost engine having spread apart, the supporting sills being rotten; and that Marland was frequently absent from the station, and went to Boston four or five times a month.

George Byam testified that he was a conductor on the train; that it was a double train, but had the same complement of brakemen, &c. as they would have on a single train; that it was made up by Robinson, the superintendent of the freight yard, and the conductor and engineers of the train had nothing to do with its making up. On cross-examination, he said that by "a double train," he meant a train with two engines; that there was no particular number of cars constituting a single train, and that this was a large and heavy train requiring two engines to draw it.

The plaintiff offered to prove that the station agent was required by the defendant to go to Boston as often as stated, which was excluded. He also offered to show that the salary of the station agent was very small and inadequate, and this was also excluded.

There was no evidence that the condition of the sleepers on the side track had ever been brought to the attention of any officer of the company, or that Horan had ever been known before, during a service of twelve years, to have been wanting in reasonable and ordinary care and attention in the execution of his duties.

Upon this evidence, the judge ruled that the action could not be maintained, and directed a verdict in each case for the defendant. If this ruling was correct, judgment was to be entered on the verdicts; otherwise, the cases were to stand for trial.

*L. M. Child*, for the plaintiffs.

*S. B. Ives, Jr. & S. Lincoln, Jr.*, for the defendant, were not called upon.

BY THE COURT. The cause of action in each of these cases was the misplacement of a switch through the negligence of a fellow-servant of the plaintiff's intestate. *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49. *Gilman* v. *Eastern Railroad*, 10 Allen, 233. *Judgments on the verdicts.*