HENRY C. HOLDEN *vs.* FITCHBURG RAILROAD COMPANY.

Worcester.   Oct. 1, 1878. — Sept. 16, 1880.   AMES & SOULE, JJ., absent.

The rule of law, that a servant cannot maintain an action against his master for an injury caused by the fault or negligence of a fellow-servant, is not confined to the case of two servants working in company, or having opportunity to control or influence the conduct of each other, but extends to every case in which the two, deriving their authority and their compensation from the same source, are engaged in the same business, though in different departments of duty; and it makes no difference that the servant whose negligence causes the injury is a submanager or foreman, of higher grade or greater authority than the plaintiff.

If a master uses reasonable care in employing suitable servants, in supplying and keeping in repair suitable structures and engines, and in giving proper directions and taking due precautions as to their use, he is not responsible to one servant for the negligence of another in the management and use of such structures and engines in carrying on the master's work.

A railroad corporation is not liable to a brakeman on one of its trains for injuries suffered from the negligent setting up and use of a derrick by workmen employed in widening its railroad.

A master, whether a natural person or a corporation, is bound to use reasonable care in selecting his servants, and in keeping the engines with which, and the buildings, places and structures in, upon or over which, his business is carried on, in a fit and safe condition, and is liable to any of his servants for injuries suffered by them by reason of his negligence in this respect.

If a railroad corporation suffers a derrick, not actually in use for the purposes of its business, to remain for an unreasonable length of time, on land within its

control, in such a position by the side of its track as to be in danger of being thrown down by ordinary natural causes so as to interfere with the safe passage of its trains, the corporation is liable to a brakeman for injuries resulting from its own neglect in not removing the derrick, or in not guarding against the danger of allowing it to remain, even if it was put up by other servants of the corporation, and independently of the question of their negligence.

TORT for personal injuries sustained by the plaintiff while in the employ of the defendant corporation as a brakeman.

At the trial in the Superior Court at November term 1877, before *Wilkinson,* J., the plaintiff offered to prove the following facts :

Prior to June 1876, a public street in Fitchburg had crossed the defendant's railroad by a bridge resting on stone abutments, the railroad at that point passing through a deep cut. In June 1876, upon the petition of the defendant and others, the city council of Fitchburg discontinued a part of this street, including the part which crossed the railroad, and also laid out and extended another public street on the southerly side of the railroad as a substitute for the discontinued portion of the old street. This action of the city council was taken upon an agreement with the defendant that the latter would do all the necessary work in constructing the extended street, and effecting the discontinuance of the old street, and would pay all damages caused by the extending and discontinuance. In pursuance of this agreement, the defendant employed workmen, and proceeded to execute the work, some of which was within and some without the located limits of the railroad. The object of the defendant was to widen its railroad at and near the crossing, and to lay additional tracks.

At the time of the plaintiff's injury the defendant was engaged in widening its railroad at a point where it was crossed by the old street in Fitchburg, for the purpose of laying additional tracks. In the execution of the work, the defendant's workmen had occasion to use a derrick owned and furnished to them by the defendant, for the purpose of removing the abutments of the bridge, and for building a supporting wall to the newly extended street, and for building other walls partly within and partly without the located limits of the railroad. At the time of the injury, a portion of the abutments of the bridge had been removed, leaving the bank, consisting of earth and stones,

on the north side of the track, and in plain view thereof, over-
hanging and projecting, and of a height of about seventeen feet.
Several days before the accident, the workmen, in pursuance of
the work, had set up the derrick on the north side of the track
about on a level therewith, within four or five feet of the over-
hanging bank and within the located limits of the railroad. One
guy was stretched across the track to the south side and there
fastened, being of sufficient height when the derrick was upright
to clear the passing trains. The other guys were fastened on
the north side. The derrick was carelessly and negligently set
up, the guys not being taut, and it was placed dangerously
near the overhanging bank. The plaintiff did not contend that
the derrick was not suitable for the work for which it was
designed.

The day before the injury was warm, and the bank thawed,
and it was obvious to any one who looked at it that a large
mass of the bank was loosened, and liable to fall upon the der-
rick. The derrick had remained in the manner and position
above described for a fortnight or more, and for ten days at
least before the injury had not been used. The weather had
been alternately thawing and freezing during that time. On
December 15, 1876, a short time before the train on which
the plaintiff was at work came along, a great mass of the bank
broke off and fell on to the derrick, breaking it and knocking
it down, and bringing the guy stretching across the railroad
down in such a position that, when the train came along, it
tore off the smoke-stack of the engine and swept over the tops
of the cars, striking the plaintiff and causing the injury com-
plained of.

The defendant employed a road-master who had charge of
that portion and other portions of the railroad, and the gen-
eral charge and supervision of the repairs and maintenance of
the road-bed and tracks; but he had no charge of the work
of altering this street, or removing these stone abutments, or
digging for the additional tracks, and the men who were doing
that work were not under his control. Within ten days before
the injury, he passed over the railroad frequently, and knew or
had reasonable cause to know the situation of the bank and
derrick.

The defendant contended that, if these facts were proved, there was no evidence of negligence on its part; and that the negligence, if any, was that of fellow-servants of the plaintiff. The judge reported the case, by consent of the parties, before verdict, for the determination of this court. If, upon the above offer of proof, the plaintiff was entitled to go to the jury, the case was to stand for trial; otherwise, judgment was to be entered for the defendant.

*F. P. Goulding,* for the plaintiff.

*G. A. Torrey,* (*T. K. Ware* with him,) for the defendant.

GRAY, C. J.　It is well settled in this Commonwealth, and in Great Britain, that the rule of law, that a servant cannot maintain an action against his master for an injury caused by the fault or negligence of a fellow-servant, is not confined to the case of two servants working in company, or having opportunity to control or influence the conduct of each other, but extends to every case in which the two, deriving their authority and their compensation from the same source, are engaged in the same business, though in different departments of duty. *Farwell* v. *Boston & Worcester Railroad,* 4 Met. 49. *Bartonshill Coal Co.* v. *Reid,* 3 Macq. 266. *Morgan* v. *Vale of Neath Railway,* 5 B. & S. 570, 736, and L. R. 1 Q. B. 149. *Wilson* v. *Merry,* L. R. 1 H. L. Sc. 326.

In *Farwell* v. *Boston & Worcester Railroad,* which has long been considered, both in this country and in England, the leading case upon the subject, Chief Justice Shaw, in delivering the judgment of the court, said : " The general rule, resulting from considerations as well of justice as of policy, is, that he who engages in the employment of another for the performance of specified duties and services, for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and, in legal presumption, the compensation is adjusted accordingly. And we are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same employment. These are perils which the servant is as likely to know, and against which he can as effectually guard, as the master. They are perils incident to the service, and which can be as distinctly foreseen and provided for in the rate of compensation

as any others." 4 Met. 57. "The master, in the case supposed, is not exempt from liability because the servant has better means of providing for his safety when he is employed in immediate connection with those from whose negligence he might suffer; but because the implied contract of the master does not extend to indemnify the servant against the negligence of any one but himself; and he is not liable in tort, as for the negligence of his servant, because the person suffering does not stand towards him in the relation of a stranger, but is one whose rights are regulated by contract, express or implied. The exemption of the master, therefore, from liability for the negligence of a fellow-servant does not depend exclusively upon the consideration that the servant has better means to provide for his own safety, but upon other grounds. Hence the separation of the employment into different departments cannot create that liability, when it does not arise from express or implied contract, or from a responsibility created by law to third persons and strangers for the negligence of a servant." 4 Met. 60, 61.

In that case, the business of a railroad corporation, within the meaning of the rule, was defined to be " to construct and maintain a railroad, and to employ their trains of cars to carry persons and merchandise for hire;" 4 Met. 55; and it was held, that a railroad corporation was not liable to the driver of the locomotive engine of a passenger train for an injury sustained in consequence of the negligence of a switchman in the management of a switch. Upon the same principle, it has been held by this court, that an apprentice acting as fireman of a locomotive engine is a fellow-servant with those employed to construct switches on the tracks of the railroad; *King* v. *Boston & Worcester Railroad*, 9 Cush. 112; that a laborer employed to repair the road-bed, or a carpenter employed to repair bridges and fences and to do like work on the line of the railroad, is a fellow-servant with those in charge of the train by which he was being carried to his place of labor; *Gillshannon* v. *Stony Brook Railroad*, 10 Cush. 228; *Seaver* v. *Boston & Maine Railroad*, 14 Gray, 466; and that a carpenter employed in the repair shop, and being so carried, is a fellow-servant with a flagman or switchman. *Gilman* v. *Eastern Railroad*, 10 Allen, 233, and 13 Allen, 433. The rule has been steadfastly upheld by the English courts under

similar circumstances. *Hutchinson* v. *York, Newcastle & Berwick Railway,* 5 Exch. 343. *Waller* v. *Southeastern Railway,* 2 H. & C. 102. *Morgan* v. *Vale of Neath Railway,* above cited. *Tunney* v. *Midland Railway,* L. R. 1 C. P. 291. See also *Lovell* v. *Howell,* 1 C. P. D. 161; *Charles* v. *Taylor,* 3 C. P. D. 492. And it makes no difference that the servant whose negligence causes the injury is a submanager or foreman, of higher grade or greater authority than the plaintiff. *Albro* v. *Agawam Canal,* 6 Cush. 75. *Zeigler* v. *Day,* 123 Mass. 152. *Walker* v. *Boston & Maine Railroad,* 128 Mass. 8. *Gallagher* v. *Piper,* 16 C. B. (N. S.) 669. *Feltham* v. *England,* L. R. 2 Q. B. 33. *Wilson* v. *Merry,* above cited. *Howells* v. *Landore Steel Co.* L. R. 10 Q. B. 62.

Nothing was decided in *Ford* v. *Fitchburg Railroad,* 110 Mass. 240, inconsistent with this view. The meaning of the statement on page 260, " The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating it," is explained by the sentence that immediately follows, " They are charged with the master's duty to his servant." The decision in that case was, that if a railroad corporation, acting by its proper officers and agents, did not use due care in keeping a locomotive engine in repair, the driver of the engine might maintain an action against the corporation for personal injuries caused by the defective condition of the engine ; and that there was no error in a refusal to instruct the jury that the corporation was not liable, unless the plaintiff proved that the president, directors or superintendent either personally knew, or by the exercise of reasonable care in the performance of their duties might have known, that the engine was defective, or that the persons employed to have the charge of it and keep it in repair were incompetent; because, as was said in the opinion, " the question was not whether the officers named knew, or might have known, of the defect, or of the incompetency of those who had charge of the repairs, but whether the corporation in any part of its organization, by any of its agents, or for want of agents, failed to exercise due care to prevent injury to the plaintiff from defects in the instrument furnished for his use." 110 Mass. 261.

If a master uses reasonable care in employing suitable servants, in supplying and keeping in repair suitable structures and engines, and in giving proper directions and taking due precautions as to their use, he is not responsible to one servant for the negligence of another in the management and use of such structures and engines in carrying on the master's work. The decisions of this court furnish illustrations of this application of the rule under a great variety of circumstances. *Albro* v. *Agawam Canal*, above cited. *Durgin* v. *Munson*, 9 Allen, 396. *Duffy* v. *Upton*, 113 Mass. 544. *Avilla* v. *Nash*, 117 Mass. 318. *Hodgkins* v. *Eastern Railroad*, 119 Mass. 419. *O'Connor* v. *Roberts*, 120 Mass. 227. *Kelley* v. *Norcross*, 121 Mass. 508. *Harkins* v. *Standard Sugar Refinery*, 122 Mass. 400. *Zeigler* v. *Day*, 123 Mass 152. *Colton* v. *Richards*, 123 Mass. 484. *Smith* v. *Lowell Manuf. Co.* 124 Mass. 114. *Morse* v. *Glendon Co.* 125 Mass. 282. *Kelley* v. *Boston Lead Co.* 128 Mass. 456. See also *Tarrant* v. *Webb*, 18 C. B. 797; *Hall* v. *Johnson*, 3 H. & C. 589; *Wilson* v. *Merry*, above cited.

The reasons and the limits of the rule, so applied, are clearly brought out in the judgments delivered in the House of Lords in *Wilson* v. *Merry*. In that case, the defendants, who were coal and iron masters, had used due care in selecting the submanager of a coal pit, and had furnished him with all necessary implements and resources for working the pit, and there was no defect in the general system of ventilation; the submanager, in order to open a seam of coal, built a scaffold which obstructed the circulation of air beneath, and caused an accumulation of fire-damp, which exploded and injured a workman in the mine; and for this injury the action was brought.

Lord Chancellor Cairns stated the reason of the general rule substantially in the same way as Chief Justice Shaw had done in 4 Met. 60, above cited, and said: "The master is not, and cannot be, liable to his servant, unless there be negligence on the part of the master in that in which he, the master, has contracted or undertaken with his servant to do. The master has not contracted or undertaken to execute in person the work connected with his business." "But what the master is, in my opinion, bound to his servant to do, in the event of his not personally superintending and directing the work, is to select proper and

competent persons to do so, and to furnish them with adequate materials and resources for the work. When he has done this, he has, in my opinion, done all that he is bound to do. And, if the persons so selected are guilty of negligence, this is not the negligence of the master." L. R. 1 H. L. Sc. 332.

Lord Cranworth said: "In order effectually to carry on the work, it was necessary that a scaffolding should be fixed under the superintendence of an underground manager, and when so fixed it was necessary that workmen should be employed at it in excavating the mine under similar superintendence." "If, indeed, the owners had failed to take reasonable care in causing the scaffold to be erected, the case would have been different, but of this there is no evidence. It certainly was not incumbent on them personally to fix the scaffold. They discharged their duty when they procured the services of a competent underground manager." L. R. 1 H. L. Sc. 334, 335.

Lord Chelmsford pointed out the distinction between that "system of ventilation and putting the mine into a safe and proper condition for working," which "it was the duty of the master for whose benefit the work is being carried on to provide," and the system of what might be called "local ventilation," which it became necessary to arrange in the course of working the pit, and which must be considered as part of the mining operations; and observed that, even if the accident happened in consequence of the scaffold in the particular seam having, under the submanager's orders, been so constructed as to obstruct the necessary ventilation, it would have been the result of negligence in the course of working the mine, and one of the risks incident to the employment. L. R. 1 H. L. Sc. 336, 337.

Lord Colonsay said: "I think that there are duties incumbent on masters with reference to the safety of laborers in mines and factories, on the fulfilment of which the laborers are entitled to rely, and for the failure in which the master may be responsible. A total neglect to provide any system of ventilation for the mine may be of that character. Culpable negligence in supervision, if the master takes the supervision on himself;— or, where he devolves it on others, the heedless selection of unskilful or incompetent persons for the duty, — or the failure to provide, or

supply the means of providing, proper machinery or materials;—
may furnish grounds of liability; and there may be other duties,
varying according to the nature of the employment, wherein, if
the master fails, he may be responsible." But he was of opinion
that the direction of the judge under which a verdict had been
returned against the defendants was objectionable, because it ap-
parently dealt with the alleged defect in the scaffold as if it was
a defect in the general arrangement or system of ventilation
of the pit, for which in certain views the defendants might be
regarded as liable; whereas it was a defect in the construction
of a temporary structure erected by order of the submanager for
certain working operations, whereby the free action of a good
system of ventilation was temporarily interfered with, which
raised a totally different question for the consideration of the
jury in reference to the liability of the defendants for the fault
of the submanager; and this was one of the grounds on which
a new trial was ordered.   L. R. 1 H. L. Sc. 344–346.

In *Farwell* v. *Boston & Worcester Railroad*, Chief Justice Shaw
said: "We are far from undertaking to say that there are no
implied warranties and undertakings arising out of the relation
of master and servant.   Whether, for instance, the employer
would be responsible to an engineer for a loss arising from a
defective or ill-constructed steam-engine: Whether this would
depend upon an implied warranty of its goodness and sufficiency,
or upon the fact of wilful misconduct or gross negligence on the
part of the employer, if a natural person, or of the superintend-
ent or immediate representative and managing agent, in case of
an incorporated company — are questions on which we give no
opinion."   4 Met. 62.

By subsequent decisions it has been settled that the master,
whether a natural person or a corporation, is bound to use reason-
able care in selecting his servants, and in keeping the engines
with which, and the buildings, places and structures in, upon
or over which, his business is carried on, in a fit and safe condi-
tion, and is liable to any of his servants for injuries suffered
by them by reason of his negligence in this respect.   *Cayzer* v.
*Taylor*, 10 Gray, 274.   *Snow* v. *Housatonic Railroad*, 8 Allen, 441.
*Gilman* v. *Eastern Railroad*, above cited.   *Coombs* v. *New Bedford
Cordage Co.* 102 Mass. 572.   *Huddleston* v. *Lowell Machine Shop,*

106 Mass. 282.   The master does not warrant the safety or suffi‹ ciency of such places, buildings, structures or engines.   *Ladd* v. *New Bedford Railroad*, 119 Mass. 412.   But he is bound to use reasonable care, having regard to the nature of the business and the circumstances of the case, to secure their safety and sufficiency.

It is difficult, if not impossible, to lay down a more definite rule applicable to all cases.   As to switches or turn-tables upon the line of a railroad, the employment of suitable persons to select, construct or inspect has been held to satisfy the obligation of the corporation.   *King* v. *Boston & Worcester Railroad*, Suffolk, November Term 1851; *S. C.* 9 Cush. 112.*   *Sammon* v. *New York & Harlem Railroad*, 62 N. Y. 251.   *Potts* v. *Port Carlisle Dock & Railway*, 2 L. T. (N. S.) 283.   On the other hand,

---

* That was an action against a railroad corporation by an apprentice employed in its machine shop, and acting at the time, without additional compensation, as fireman of a locomotive engine, for an injury caused by the breaking of a switch at the junction of the Brookline Branch with the main track of the defendant's railroad.   The report in 9 Cush. 112–115 states that the full court held that " the case distinctly shows that there was no want of ordinary care and diligence on the part of the defendants; " but omits to state that part of the case which related to this point, and which in the judge's report on file is as follows: " To prove the nature of the defect in the switch and the cause of the accident, the plaintiff called as a witness Benjamin Wallace, who testified as follows: I was employed as second foreman in the machine shop of the defendants.   Mr. Woodworth was foreman.   The joint of the switch-rod, which broke at the time of the accident, was made at the shop of Mr. Wilmarth in South Boston.   It was sent there to be made, because our machine shop was so full of work at the time that we could not make it.   After the work was done at Wilmarth's, it was sent to our shop; and to complete it, ready for the switch, I put into the centre an iron rod six feet long.   This was the switch-rod of the Brookline Branch.   I cannot say Mr. Woodworth saw or inspected it.   All I did to it was to put in the connecting centre-piece.   It was part of my business to attend to switches at the crossing of the Tremont Road.   When I put in the connecting centre-piece, I looked at the joint which afterwards broke, and thought it was sufficiently safe.   It was a new patent switch-rod, got up by Mr. Parker, the superintendent of the railroad; it was intended to move four tracks, and moving the switch operated on the joint; but there was nothing peculiar in the joint, it was like all switch-rod joints, the novelty consisting in the length of the rod and the number of tracks it moved, but not in the joint itself."

where a locomotive engine in actual use is imperfectly constructed, or is worn out, it has been held that the fact that the corporation has employed suitable persons to construct it or to keep it in repair does not, as matter of law, afford a conclusive defence; but that the question is whether, under all the circumstances, the corporation, acting by its appropriate officers or agents, has used that diligence and taken those precautions which its duty as a master requires. *Ford* v. *Fitchburg Railroad*, 110 Mass. 240. *Hough* v. *Railway Co.* 100 U. S. 213. See also *Searle* v. *Lindsay*, 11 C. B. (N. S.) 429; *Allen* v. *New Gas Co.* 1 Ex. D. 251; *Murphy* v. *Phillips*, 35 L. T. (N. S.) 477.

If a railroad corporation has suffered a structure, not actually in use for the purposes of its business, to remain for an unreasonable length of time, on land within its control, in such a position by the side of its track as to be in danger of being thrown down by ordinary natural causes so as to interfere with the safe passage of its trains, the structure is in law a nuisance, and the corporation is liable to servants employed upon its passing trains, as well as to other persons, for injuries resulting from its own neglect in not removing the structure, or in not guarding against the danger of allowing it to remain in such a place, whether it was originally put there by other servants of the corporation or by strangers, and independently of the question of negligence on the part of those who placed it there.

In the case at bar, the workmen employed in widening the railroad were fellow-servants of the brakemen on the trains; and it being admitted that the derrick was suitable for the work for which it was designed, and there being no evidence of negligence on the part of the corporation in selecting or instructing the workmen, any negligence of theirs in setting up or using the derrick is the negligence of fellow-servants of the plaintiff, for which the defendants cannot be held liable in this action.

But the evidence at the trial tended to show that the derrick had remained unused by the side of the track, dangerously near an overhanging bank of earth and stones, in plain view, and with a guy loosely stretched across the track (though at a sufficient height when the derrick was upright to clear the passing trains) for at least ten days while the weather was alternately

freezing and thawing; that on the day preceding the night on which the plaintiff was injured the bank thawed, and it was apparent to any one who looked at it that a large mass of the bank was loosened and ready to fall upon the derrick; and that, just before the freight train on which the plaintiff was at work came along, such a mass broke off from the bank, and fell upon the derrick, knocking it down and bringing the guy stretched across the track into such a position that it swept over the top of the train and struck the plaintiff, causing the injury sued for. This evidence would warrant a jury in finding that the defendant corporation had not used the care which the circumstances required to keep the track in a safe condition, and to guard against the impending danger.                    *Case to stand for trial.*