MICHAEL ROGERS *vs.* LUDLOW MANUFACTURING COMPANY.

Hampden.   Sept. 28, 1886. — March 23, 1887.   DEVENS & W. ALLEN,
JJ., absent.

If a master employs a servant to work on a machine which is so far out of repair
as to be dangerous, and which has remained in that condition for a long time,
he is not relieved from responsibility to the servant, for an injury sustained
while working on the machine, merely by proof that he has entrusted to com-
petent servants the duty of making ordinary repairs of the machine, and the
keeping of it in order from day to day, and has supplied them with suitable
means for that purpose, if it appears that the servants only inspected the
machine for the purpose of keeping it in order so that it would do good work,
without regard to its condition as a dangerous machine.

TORT, for injuries sustained by the plaintiff on December 5,
1884, while in the defendant's employ.   At the trial in the
Superior Court, before *Rockwell*, J., the evidence for the plaintiff
tended to show the following facts:

The plaintiff was injured while at work on a carding machine.
This machine consists of a large cylinder covered with a strip of
wood, called the lag.   In this strip card-pins are driven.   Back
of this cylinder is another called the worker, which works flax
or jute into form to pass over the cylinder.   This is also covered
by a lag.   Above the worker and the large cylinder, forward of
the worker and within a foot or two of it, is another cylin-
der, called the stripper, which is also covered by a lag.   The
worker more or less frequently gets clogged with jute or the
other material used, and has to be picked with a hook to ena-
ble it to do good work.   The pins get bent or torn out, and have
to be supplied, and the lag has to be mended with more or less
frequency.

At the time the plaintiff was injured, he was engaged in pick-
ing the worker.   The hook got caught, and went into a hole in
the lag, and before he could let go of the hook his hand was
drawn into the machine, which was in motion, and he sustained
the injuries complained of.

The lags would not do good work unless kept in repair, and
men were employed to look after them and keep them in repair,
either by putting in new pins, or by replacing the old lags with

new. When the machine was examined after the accident, holes were found in the lag on the worker, caused by the pins coming out.

The defendant's evidence tended to show that there was no better carding machine than the one in use; that it was examined after the accident, and found to be in repair; that not enough pins were broken to injure the machine; that the lags were repaired or renewed when they failed to do good work; that pins got out frequently; that it was the duty of the overseer to keep the machines in repair; that a man was kept at work putting in pins in the lags; that the machines were regularly inspected once a week to see if the pins were broken or dull; that, if not enough pins were out of repair to affect the work, nothing was done to the machine; and that the lags had been on the machine in question about a year.

The defendant asked the judge to give several instructions to the jury, of which the third was as follows: " The making of such ordinary repairs as the machine requires, and the keeping of it in order from day to day, may be entrusted to servants, and if the master employs competent servants for that purpose, and supplies them with suitable means, the master performs his duty."

The judge instructed the jury, on this part of the case, as follows: " I am unable to give that instruction without some modification. It is apparent, by the testimony here given, that the defendant had an establishment, a factory; that there was a superintendent for this factory; that in the rooms, each room or collection of rooms, there was an overseer; and that there were servants in the room, all under the control and supervision of the superintendent and overseers. Now, to say, as this request asks me to, that the whole duty of the defendant was performed by engaging suitable persons to work in this room the plaintiff was working in, and doing nothing more, I think, cannot be law accurately stated. But it is certain in this Commonwealth, it is certain by the law, that the employer is not liable for injury to the person employed, the servant, as he is called in legal language, if the injury is occasioned by the neglect of fellow servants. And although the principles of that law have been discussed, and the proposition made to the Legislature to

change it, it has not been done. But to say that the mere fact that .proper employees have been employed in each of these rooms, who have been employed as fellow servants, whose business is to take care of these machines, I think, would not be proper instructions, but should be coupled with the provision that it always appeared that the employer had been using all reasonable care in the supervision of the overseers and superintendent of the establishment. It must appear that all these have done their duty. It would not be entire compliance with duty if they simply employed servants to take care of these machines. But if suitable persons are employed to take care of these machines, and to see that they are not dangerous, and that care seems to be exercised continually, and all under the oversight and care of the foreman, overseers, and superintendent, then I think that the instruction should be given, and that the duty of the company has been discharged by such appointment and such supervision. Servants so employed are co-servants of the plaintiff, and the defendant is not liable. They are fellow servants, I believe, in the eyes of the law, and the defendant is not liable for their neglect under ordinary circumstances."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*G. M. Stearns*, for the defendant.

*G. Wells*, (*J. B. Carroll* with him,) for the plaintiff.

FIELD, J. As we construe the charge of the presiding judge, and as we think it must have been understood by the jury, we find nothing in the exceptions that requires comment except the refusal to give the third instruction requested, and the instructions given in place of it. This request was taken from the opinion in *McGee* v. *Boston Cordage Co.* 139 Mass. 445, 448, with a slight change. In that opinion it was said that " the making of such ordinary repairs as the use of the machine required to keep it in order from day to day may be entrusted to servants." The request includes all ordinary repairs which the machine requires, as well as those required to keep it in order from day to day.

Since the law was established in *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49, that a master is not liable for an injury to a servant caused by the negligence of a fellow servant, because

every servant takes, by virtue of his employment, the risk of such an injury, the question has been much discussed how far a master can escape responsibility by delegating the management of his business to servants.   In that case it was said: " We are far from intending to say that there are no implied warranties and undertakings arising out of the relation of master and servant.   Whether, for instance, the employer would be responsible to an engineer for a loss arising from a defective or ill-constructed steam-engine.   Whether this would depend upon an implied warranty of its goodness and sufficiency, or upon the fact of wilful misconduct, or gross negligence on the part of the employer, if a natural person, or of the superintendent or immediate representative and managing agent, in case of an incorporated company — are questions on which we give no opinion."    4 Met. 62.

Since the decision in *Farwell* v. *Boston & Worcester Railroad*, it has been established that it is the duty of the master to take reasonable care that suitable machinery be provided, that it be kept in proper repair, and that competent servants be employed and retained.

As a corporation must act by natural persons, and as all large corporations carry on their business by means of servants of different grades, it is manifest that, if it is held that these are all fellow servants, and that the corporation can delegate the whole duty of hiring and superintending its servants, and of providing its machinery and of keeping it in repair, to one or more principal servants, such as superintendents or managers, the corporation may escape all responsibility for injuries caused by defective machinery, except in the few cases where it can be shown that these principal servants were incompetent, or that the directors of the corporation, or its principal officers, knew that the subordinate servants were incompetent, or that the machinery used was defective.   To avoid this result, some courts have held that superintendents or managers are not fellow servants with the men employed to work under them, or that servants employed in one department of the business are not fellow servants with those employed in another.   Other courts have held that they are all fellow servants, but that the master cannot avoid his obligation to see to it that reasonable care shall be exercised in procuring suitable machinery, in keeping it

in repair, and in hiring and retaining competent servants, by employing a servant to do these things for him, and that if he does employ a servant for this purpose, and the servant does not use due care, the master is responsible.

The tendency of the English courts, before the passage of the " Employers' Liability Act," (43 & 44 Vict. *c.* 42,) was to restrict very much the liability of the master. In *Wilson* v. *Merry*, L. R. 1 H. L. Sc. 326, 332, it was said by Lord Chancellor Cairns: "What the master is, in my opinion, bound to his servant to do, in the event of his not personally superintending and directing the work, is to select proper and competent persons to do so, and to furnish them with adequate materials and resources for the work. When he has done this, he has, in my opinion, done all that he is bound to do." Such a rule makes the liability of the master depend largely upon the extent of the supervision which he has undertaken personally to exercise over his business, and recognizes few duties except those which the master has undertaken personally to perform.

The rule of *respondeat superior* as applied to cases like the present, the exception of injuries caused by the negligence of a fellow servant, and the limitations of this exception have been established by courts upon considerations of public policy, as well as of the legal principles which govern cases somewhat analogous. If a master who takes no personal part in the management of his business has any duty to perform towards his servants, it is difficult to say that it is always wholly performed by doing two things, namely, by employing competent servants, and by furnishing ample means. In order that the business may be properly managed, the servants should not only be competent, but they should be numerous enough to do, and they should have the means of doing, whatever ought reasonably to be done, and such regulations should be established as will insure the requisite subordination and control, and the exercise of reasonable intelligence and care in the conduct of the business; and it is almost as difficult to define all the duties of the master in these respects as to define the duties of a person under other relations. If it is not the absolute duty of the master to furnish suitable machinery, and if he is not held to warrant that the servants

he employs to furnish machinery, or to keep it in repair, shall always use reasonable care, then the duty of a master who does not personally conduct his business, if he is under any duty, we think, must be to use reasonable care in the management, and that is to exercise, or have exercised, a reasonable supervision over the conduct of his servants, as well as to use reasonable care in seeing that his servants are competent, and are furnished with suitable means for carrying on the business.

It is settled in this Commonwealth that all servants employed by the same master in a common service are fellow-servants, whatever may be their grade or rank. *Albro* v. *Agawam Canal*, 6 Cush. 75. *O'Connor* v. *Roberts*, 120 Mass. 227. *Walker* v. *Boston & Maine Railroad*, 128 Mass. 8. *Holden* v. *Fitchburg Railroad*, 129 Mass. 268. *McDermott* v. *Boston*, 133 Mass. 349. *Flynn* v. *Salem*, 134 Mass. 351. *Mackin* v. *Boston & Albany Railroad*, 135 Mass. 201.

It is also settled that the master is only bound to use reasonable care in procuring suitable machines, in keeping them in proper repair, and in hiring and retaining competent servants. The difficult question is what conduct on the part of the master satisfies this obligation. This question was carefully considered in *Holden* v. *Fitchburg Railroad, ubi supra.* It is there said that the master " is bound to use reasonable care in selecting his servants, and in keeping the engines with which, and the buildings, places, and structures in, upon, or over which, his business is carried on, in a fit and safe condition, and is liable to any of his servants for injuries suffered by them by reason of his negligence in this respect. . . . . It is difficult, if not impossible, to lay down a more definite rule applicable to all cases. As to switches or turn-tables upon the line of a railroad, the employment of suitable persons to select, construct, or inspect, has been held to satisfy the obligation of the corporation. . . . . On the other hand, where a locomotive engine in actual use is imperfectly constructed, or is worn out, it has been held that the fact that the corporation has employed suitable persons to construct it, or to keep it in repair, does not, as matter of law, afford a conclusive defence; but that the question is whether, under all the circumstances, the corporation, acting by its appropriate officers or agents, has used that diligence and taken

those precautions which its duty as a master requires." 129 Mass. 276–278. In that case it was held that there was no evidence that the corporation was negligent, even if its servants were negligent in setting up or using a derrick, but that there was evidence of negligence on the part of the corporation in permitting the derrick to remain for at least ten days by the side of the track.

In *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 209, and in *Elmer* v. *Locke*, 135 Mass. 575, many of the cases were reviewed, and the general principle declared in *Holden* v. *Fitchburg Railroad* was so applied that in one case the corporation was found not to be liable, and in the other to be liable, to its servant.

In *Lawless* v. *Connecticut River Railroad*, 136 Mass. 1, it was held that it was the defendant's duty to furnish a suitable locomotive, and that "it did not necessarily discharge this duty by entrusting it to suitable servants and agents, but was responsible for the negligence or want of ordinary care of such servants and agents in the performance of the duty required of them."

In *Spicer* v. *South Boston Iron Co.* 138 Mass. 426, the plaintiff, a servant of the defendant, was injured by the breaking of a hook, and there was evidence that there was a visible crack or flaw in the hook, which a careful inspection would have revealed; and it was held that there was evidence of negligence on the part of the defendant corporation.

In *McGee* v. *Boston Cordage Co.*, *ubi supra*, there was no evidence that the machine was not a suitable one, in good repair, until it became entangled with hemp at the time the plaintiff was using it, and the necessity of remedying this was incidental to the use of the machine.

These decisions show that it is the duty of the master to exercise a reasonable supervision over the condition in which the machinery, structures, and other appliances used in his business are kept by his servants, and that he cannot wholly escape responsibility by delegating the performance of this duty to servants; that the negligence of his servants in repairing or in failing to repair machinery, is not necessarily the negligence of the master, but that it is also to be determined in each case

whether the master has exercised a reasonable supervision over his servants, and reasonable care in seeing that his machinery is kept in proper condition, although he may have employed competent servants and furnished them with suitable materials, and instructed them to keep the machinery in repair.

As was said in *Johnson* v. *Boston Tow-Boat Co.* 135 Mass. 215: " The master is liable in all cases for his own negligence, and that may be shown by a defect of such a nature, or so long continued, as to be of itself evidence of negligence in the master, or the negligence of a servant may be of such a character that negligence of the master may be inferred from it."

We are aware that this rule is somewhat indefinite, and is perhaps not precisely that which generally prevails in the United States. *Northern Pacific Railroad* v. *Herbert*, 116 U. S. 642. *Benzing* v. *Steinway*, 101 N. Y. 547.

There was evidence in the case at bar that the worker, at the time the plaintiff was set to work upon it, had been for a long time in a condition which made it dangerous to one picking it while in motion. To put the worker into a safe condition to be picked while in motion, it was necessary to take off the lags which were broken, or had cracks or holes in them, and to put on new lags. The danger was, that, if .there were cracks or holes in the lags, the pick might get caught, and the hand of the person picking might be drawn between the rollers. The defendant's servants whose duty it was to keep the machine in repair apparently only renewed the lags when the teeth were so far broken or bent that the machine did not do good work, and did not consider that the danger of picking the worker, if there were holes or cracks in the lags, was a reason why new lags should be put on.

The court could not properly give the instruction requested in a case where the evidence tended to show a long-continued defect in the machine which rendered it dangerous, and a habit on the part of the defendant's servants to renew the lags only when the machine ceased to do good work, and without regard to its condition as a dangerous machine. It was a question for the jury, whether the defendant used reasonable care in supervising its servants who were employed to repair the machine, and in ascertaining the condition in which its machinery was kept, as

well as whether these servants used due care in inspecting the machine from time to time, and in repairing it, or in giving persons using it warning of danger, if the condition of the machine made it dangerous. If these servants used all the care that was reasonably required in keeping the machine in proper condition, the defendant is not liable, unless it knew of the defect and unreasonably neglected to remedy it, or to give notice of the danger. If these servants did not use all the care that was reasonably required, it was for the jury to say whether the defendant had exercised a reasonable supervision over its servants, and over the manner in which the machinery was kept in repair.

We think that the instructions given by the presiding justice were substantially in accordance with this view of the law. The sentence, "It must appear that all these have done their duty," may fairly be taken to mean either that the servants must have used due care in keeping the machine in repair, or, if they did not, that reasonable care must have been used in supervising them and the condition in which the machinery was kept. This instruction was not given with reference to the burden of proof, and the only exceptions are "to the instructions given so far as they failed to comply with said requests or were inconsistent therewith." As the third instruction requested, upon the facts in evidence, ought not to have been given without some modification, as the attention of the presiding justice was not called to particular phrases, and as the general tenor of his charge was not misleading, the entry must be

*Exceptions overruled.*