## SOUTHERN RY. CO. v. LYONS.

(Circuit Court of Appeals, Fifth Circuit. April 19, 1909.)

No. 1,826.

1. MASTER AND SERVANT (§ 210*)—INJURIES TO SERVANT—ASSUMED RISK.

Plaintiff, an experienced railroad fireman 24 years old, and who had been in defendant's service for 11 months, was directed to accompany a wrecked engine to the shops and keep it oiled. In order to make the engine safe, the cab had been entirely removed, and with it the handholds usually attached thereto. Plaintiff, after oiling the engine at an intermediate station, attempted to mount it, and, reaching for the handhold which was absent, lost his balance, fell, and was injured. He testified that he thought the handholds had been replaced, though there was nothing on the engine to which they could have been attached. *Held*, that plaintiff assumed the risk of injury by the absence of such handholds.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 554; Dec. Dig. § 210.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 111*)—INJURIES TO SERVANT—DEFECTIVE RAILROAD CARS.

    The rule requiring the master to furnish reasonably safe and suitable machinery, tools, appliances, premises, etc., does not apply to defective cars and engines being removed to repair shops for repairs.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215–217; Dec. Dig. § 111.*]

3. MASTER AND SERVANT (§ 217*)—INJURIES TO SERVANT—ASSUMED RISK.

    A servant in general takes on himself the risk of dangers which ordinarily attend or are incident to the business in which he voluntarily engages, so that, if he handles defective appliances, the defects of which are known to or plainly observable to him without complaint to his employer, he assumes the risk of injury resulting therefrom.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

In Error to the Circuit Court of the United States for the Southern District of Alabama.

D. P. Bestor and B. B. Boone, for plaintiff in error.
Gregory L. Smith and Harry T. Smith, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and BURNS, District Judge.

BURNS, District Judge. This suit, commenced in a state court, was removed to the Circuit Court of the United States for the Southern District of Alabama. The action was to recover damages for a personal injury suffered by the plaintiff whilst attempting to mount a defective and crippled engine, known as a "dead engine," then being hauled from Mobile to the Selma shops for the purpose of undergoing necessary repairs.

The case was submitted to the jury upon the fifth count of the complaint, which charges, in substance: That plaintiff was in the employ of the Southern Railway Company, charged with the duty of keeping an engine oiled while the same was being pulled by another engine in a train of cars from Mobile to Selma; that at the time of the injury complained of he was acting within the line of his duty under said employment; and that said injury resulted from the defective condition, which condition had not been remedied owing to the negligence of the person in the service of the defendant intrusted by it with the duty of seeing that the same was in a proper condition. The defendant answered by plea of not guilty, contributory negligence, and assumption of risk upon the part of the plaintiff. The trial resulted in verdict and judgment for $5,000. The defendant assigns several errors, two of which are treated in the brief and addressed to the refusal of the trial court to direct a verdict in its favor. These assignments will require an examination of the testimony in the light most favorable to the plaintiff.

In the progress of the matter brought here for review, it will not be necessary to state the testimony at any great length. It is sufficient to say that the evidence developed by the record discloses that an engine belonging to the defendant was wrecked in the yards of the com-

pany at Mobile, and, as a result thereof, it was ordered to the shops at Selma for repairs. The plaintiff, who had been in the service of the defendant as fireman for 11 months, was directed to accompany said engine and keep the same properly oiled, etc. He was not directed to ride upon said engine, nor did he do so. As the result of the injuries sustained, the cab, in railway vernacular, was "side swiped," and, in the language of one witness, it was completely wrecked. Plaintiff saw the engine, and demurred to the request that he attend the same, unless it was made safe. This the foreman promised to do, and his effort in this direction resulted in having the cab entirely removed. The train pulling the crippled or dead engine left Mobile about noon, and the plaintiff took passage on the head engine. At Pennsylvania Station, 14 miles from the starting point, he oiled the engine, and at Mt. Vernon, which was reached at about 4 o'clock in the afternoon, he again oiled the engine and removed from beneath the tender, attached to said engine, some brake rods which had become loose. Thereafter the train crew engaged in some switching, and passing plaintiff, who was standing upon the ground, he concluded that the train was leaving, and, while moving at a speed not to exceed five miles per hour, he attempted to mount the disabled engine, and, with the feed or oil can (about 3 feet long) in his right hand, reached for the handhold on the engine, lost his balance, fell, and received the injuries complained of. The evidence of the plaintiff further discloses that there was a handhold on the tender attached to the engine, and that the cab had two handholds on either side; same being attached to the cab and, of course, removed with it. He further states that he thought the handholds had been replaced, though there was nothing upon the engine to which they could be attached, except the woodwork of the cab. While the witness states that he thought the handholds had been replaced, he also says that there was no promise to do so. The absence of handholds is the sole ground of negligence relied upon.

To questions propounded by the court, the witness answered:

"The foreman (Nash) told me to go along with this engine and keep it oiled —keep the running gear oiled.

"Q. He employed you to go along and oil this broken engine? A. Yes, sir.

"Q. The cab was destroyed? A. Yes, sir.

"Q. And that part that had the handhold gone? A. Yes, sir.

"Q. Did you go on that engine at any time here in Mobile? A. No, sir; I was not on it.

"Q. You saw the condition of the cab? A. I saw the cab torn off.

"Q. And that handhold gone? A. Yes, sir.

"Q. The one on the tender still there? A. Yes, sir."

It appears that the engine was, with reference to the cab and handhold, in the same condition at Mt. Vernon, where the injury occurred, as when last seen by the plaintiff before leaving Mobile.

From the facts in this record, it conclusively appears:

1. That the defendant was not guilty of any act, or omission, which would constitute negligence, and therefore the plaintiff would not be entitled to recover.

2. That plaintiff knew the defective condition of the engine, this condition being the sole cause of sending the engine to the general

repair shops at Selma, and under every principle and authority the plaintiff assumed the risk incident to the patent and obvious defects in the engine, and particularly that caused by the absence of the handholds. He knew that the handholds were attached to the cab—"there was nothing else to attach them to"—and he knew that both cab and handholds had been removed before he left Mobile. To say that he thought they had been replaced is but to give rein to the imagination. With like propriety he might have thought that the cab had been replaced. The law charges him with the knowledge of defects so patent and plainly obvious.

The plaintiff is 24 years of age, has had adequate experience in the service, and, according to his testimony, was daily engaged in getting on and off engines. From the record we gather that he was not only experienced, but a man of intelligence. That a cause of action is not given to an injured employé, unless it first appears from the allegations and proof that the employer is guilty of negligence, would reasonably appear not to invite reference to authority. The doctrine which requires the master to furnish reasonably safe and suitable machinery, tools, appliances, premises, and the like, to the employé, is without application to cars and engines being moved to the repair shops for the purpose of complying with the rule that they be rendered safe and suitable. He had full and comprehensive notice of the defective condition of the engine.

The proposition that the employé engaged in making the necessary repairs, or engaged in moving a broken car or engine in order that the same may be repaired, assumes the ordinary risk of danger incident thereto, has abundant support.

In H. & T. C. Ry. Co. v. O'Hare, 64 Tex. 603, Mr. Justice Stayton, speaking for the court, says:

"That a railway company would not be liable to an employé engaged in running an engine for repairs to such place as might be necessary, if the employé knew of the defects, which made repairs necessary, is certainly true, for in such cases the employé would be held to have assumed the ordinary risks resulting from such defects."

In Railway Company v. Mayo, 14 Tex. Civ. App. 253, 37 S. W. 659, the facts were that Mayo met his death in attempting to couple two flat cars, upon one of which the coupling was defective. This car had tacked upon it a red card upon which was printed, "Bad order," and the same words were chalked upon the side of the car. The court held, upon the above facts, that there was no negligence upon the part of the company, and that the deceased assumed the risk.

In Watson v. Railway Company, 58 Tex. 438, the holding is announced:

"For general use the company must furnish its employés with sound, complete, and suitable cars, with all the usual and necessary attachments; but it is well known to all that the most complete and perfect car that can be contrived by the ingenuity of man is liable to become unfit for use, either by accident, or the nature of the business in which it is used, at points on the line where there are no facilities for making repairs, so that its removal to the shops of the company for that purpose becomes indispensable. Therefore some employé must engage in handling and removing them. This duty may be imposed upon any class of employés who are willing to assume the risks

incident to the employment; and it is immaterial whether this is the entire scope of the employment, or merely incidental to the main employment, the same result would follow. If the appellant accepted service as a brakeman, and by the usage or custom of the company it was a part of his duty to couple these defective or broken cars to the train so that the same could be carried to the shops for repairs, then he would be held to have assumed the risks incident to that particular employment. And as to the notice of the defective character of the car, if the usage of the company, in giving notice of such defect, consisted in chalking upon the car the words, "Out of order," and placing them upon a side track for removal, then it will be held that appellant engaged in the service subject to such usage or custom, and, if the notice in this case was given in the usual and customary manner, then it was sufficient."

In Flanagan v. Railway Company, 50 Wis. 462, 7 N. W. 337, it is said:

"Cars and engines are frequently damaged, and it becomes necessary to remove them to some proper place for repairs, and it may happen that they are so seriously damaged that their removal will be attended with some personal danger to those engaged in the work. Yet this is one of the perils of the business, and, if a person so employed is injured because of the broken and unsafe condition of the car or engine, he has no remedy against the owner, unless the owner has been otherwise negligent. Besides, in this case, the defect in the car which he attempted to climb upon was plain and visible, one which he could not fail to see had he looked where he was placing his foot."

To the same effect see: Yeaton v. Boston & Lowell Ry., 135 Mass. 418; Chicago & Northwestern Ry. v. Ward, 61 Ill. 130; Holden v. Fitchburg Ry., 129 Mass. 268, 37 Am. Rep. 343.

The general rule of law that a servant takes upon himself the risk of the dangers which ordinarily attend or are incident to the business in which he voluntarily engages, is well settled and undisputed. Where the employé handles defective appliances furnished by the master, where the defects are known to or plainly observable by him, without complaint to the employer, he assumes the risk of injury resulting therefrom. The authorities in support of this proposition are cited in volume 4, § 75, p. 3976, U. S. Digest (Lawyers Co-Operative Pub. Co.).

In the case of Railway Company v. McDade, 191 U. S. 68, 24 Sup. Ct. 24, 48 L. Ed. 96, after stating the general rule with reference to the duty of the master to provide suitable appliances in the operation of his business, the court announces:

"This rule is subject to the exception that where a defect is known to the employé, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge, and without objection, without assuming the hazard incident to such a situation. In other words, if he knows of a defect, or it is so plainly observable that he may be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master, notwithstanding the defect, and in such case cannot recover."

In the case of Butler v. Frazee, 211 U. S. 459, 29 Sup. Ct. 136, 53 L. Ed. ——, Mr. Justice Moody, speaking for the court, says:

"Where the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employé is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence, a verdict for

the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly." Patton v. Texas Pacific, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, and cases there cited.

We think it may be said, as a matter of law, that the plaintiff voluntarily assumed the risk.

Upon the errors assigned, the case should be reversed, and it is so ordered.