FLANNAGAN vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*November 13 — November 30, 1880.*

RAILROADS: NEGLIGENCE. *Accident to employee in moving broken car to repair shop.*

1. The former decision in this case (45 Wis., 98), that a railroad company is not chargeable with negligence merely because it delays, for any length of time, to repair a broken car while it remains unused and not so situated as to create danger, nor merely because it moves such car to its shops for repairs, and does not make such repairs at the place where the car was injured — approved.

2. A rule of the defendant company to send all its cars used in carrying ore, after they are unladen at the point of transshipment, to the repair shops for inspection and for such repairs as any of them may be found to require, is reasonable; and persons employed to move trains of such unloaded cars to the shops must be held to have assumed the extra hazard of such employment; and the company is not chargeable with negligence because one or more of the cars in such a train is out of repair.

3. The facts that the foreman of the gang in which plaintiff was engaged, directed him, after turning a switch, to mount the second car from the engine for the purpose of aiding in sending the unloaded cars down to the repair shop, and that plaintiff was injured in mounting said car in consequence of its having a broken jaw-brace, are not sufficient to warrant a jury in finding the defendant company guilty of negligence, where there is no evidence that such foreman was charged with the business of inspecting the cars, or knew of the defect in said car, or had any better means of knowledge than the plaintiff.

4. How far the defendant company would be liable for injuries to plaintiff as an employee, if caused by negligence of such foreman, not considered.

·APPEAL from the Circuit Court for *Jefferson* County.

Action for an injury to the plaintiff's person from defendant's negligence. The case made by the complaint was substantially as follows: Defendant was a railroad corporation of the state of Michigan, operating a line of road from Negaunee to Escanaba in that state. On the 31st of August, 1872, and for a long time prior thereto, plaintiff was in defendant's employ under a contract by which he was to perform services as a brakeman on ore trains in and about the yards and ore docks of defendant at Escanaba; and in such employment he was required to couple and uncouple cars, and to get off and upon trains in motion — to get off from trains and open a switch, and, after the trains had passed, to set up the switch again, and, as the trains returned and while they were in motion, to get upon them for the purpose of uncoupling the cars from the engines. In consideration of such service, defendant, besides paying plaintiff a certain sum per month, undertook to provide safe and suitable cars with all the necessary appendages, etc., and to have the trains and cars superin-

tended and managed by competent and skilled servants and agents, so as to enable plaintiff to safely perform his said services. At the time and place aforesaid, and while so working for defendant, plaintiff was subject to the directions of one O'Brien, a servant and agent of defendant, who was acting as conductor or head-manager or director of the ore trains in and about said yard and docks; and said O'Brien was under the supervision and direction of one Moore, defendant's yard-master in and about said yard and docks; and it was the duty of Moore and O'Brien to make up trains and move them about said docks and yard, and to look after the cars and see that they were all in proper and safe condition. The cars used by defendant in and about said yard and docks are constructed with a "jaw-brace" (being a piece of hardwood timber seven or eight feet long, two inches thick, and about four inches wide, fastened with iron bolts and screws to the under part of an iron box or fixture around the outside end of the axle of each car wheel), which jaw-brace extends from the back to the forward wheel of the car a few inches below the center and on the outside of each car; and the same is made and used for the brakeman to place his foot on in order to get on the top of the car when it is in motion, and is the only means provided for that purpose on said ore cars, except pieces on the side of the car above, which the brakeman seizes with his hands when he puts his foot upon the jaw-brace; and it is impossible to get upon such a car with safety while in motion unless there is a jaw-brace attached. At the time and place aforesaid, defendant negligently used an ore car which was unsafe and defective in that the jaw-brace belonging thereto was broken off; and, with notice of that fact, defendant negligently moved said ore train with said broken car from the dock to the yard, and plaintiff was required as brakeman to get upon the train while in motion, draw the pin and uncouple the train, so that the cars might pass down into the yard; and, without notice or fault on his

part, while attempting to get upon the train for the purpose mentioned, and by reason of such unsafe and defective condition of said car, he was thrown upon the track, and his left leg was crushed by the train passing over it, so that it had to be amputated above the knee, to his damage, etc.

The answer was a general denial, except as to defendant's corporate character.

The essential facts appearing from the evidence as to the circumstances under which plaintiff's injuries were received, are sufficiently stated in the opinion.

After plaintiff's evidence was closed, the court, on defendant's motion, rendered a judgment of nonsuit; from which plaintiff appealed.

For the appellant there was a brief by *Markhams & Smith*, his attorneys, with *Edward S. Bragg* of counsel, and oral argument by *E. P. Smith:*

1. It was for the jury alone to determine whether, under all the circumstances, the plaintiff, exercising reasonable care, could have avoided the accident. *Langhoff v. Railway Co.*, 19 Wis., 489; *Barstow v. Berlin*, 34 id., 362; *Dorsey v. Constr. Co.*, 42 id., 602; *Gower v. Railway Co.*, 45 id., 182; *Thomas v. Telegraph Co.*, 100 Mass., 156; *Gayner v. Railway Co.*, id., 208. The fact that he knew all cars were sent down for inspection and were liable to need slight repairs, cannot *conclusively* charge him with negligence in not ascertaining that the car was broken. It was, with other facts proven, for the consideration of the jury. *Kelley v. Fond du Lac*, 31 Wis., 179; *Kenworthy v. Ironton*, 41 id., 647; Wood on M. & S., § 377. The nature of the employment was not shown to have required of the plaintiff unusual precautions. The repairs ordinarily required were slight, and there is no evidence that it was ever necessary for plaintiff to get upon a car known to be broken, for the purpose of moving it. There was nothing in the line of his duty requiring him to inspect and know the condition of the cars. He had the right to rely upon the belief that the

company had performed that duty, and that he would not be put in charge of the cars if, by reason of any serious defect, their use was dangerous. *Le Claire v. Railroad Co.*, 20 Minn., 9; *Ft. Wayne, I. & S. R. R. Co. v. Gildersleeve*, 33 Mich., 133; *Thompson v. Hermann*, 47 Wis., 606; *Muldowney v. Railway Co.*, 36 Iowa, 462; *Plank v. Railway Co.*, 60 N. Y., 607; *Coombs v. New Bedford Cord. Co.*, 102 Mass., 572; *C. & N. W. R'y Co. v. Jackson*, 55 Ill., 492; *Brabbits v. Railway Co.*, 38 Wis., 289; *Gilman v. R. R. Co.*, 13 Allen, 435. In getting upon the moving train, sudden and prompt action was necessary. There was no time for consideration or examination as to whether others had been derelict in another line of duty. *Weisenberg v. Appleton*, 26 Wis., 56; *Barstow v. Berlin*, 34 id., 357; *Dorsey v. Constr. Co.*, 42 id., 583; *Buel v. R. R. Co.*, 31 N. Y., 314; *Eckert v. R. R. Co.*, 43 id., 502; *Snow v. Housatonic R. R. Co.*, 8 Allen, 446; *Linnehan v. Sampson*, 126 Mass., 511; *Patterson v. Railroad Co.*, 76 Pa. St., 389; *C. & N. W. Railway Co. v. Jackson*, 55 Ill., 492; *Greenleaf v. Ill. C. R. R. Co.*, 29 Iowa, 14; Wood on M. & S., §§ 387, 352. 2. It being a part of plaintiff's duty to get on the cars while in motion, the defendant was bound to furnish proper and safe appliances to aid in the performance of that duty. *Wedgwood v. Railway Co.*, 41 Wis., 482; *Bessex v. Railway Co.*, 45 id., 477; *Thompson v. Hermann*, 47 id., 632; *Clarke v. Holmes*, 7 Hurl. & Norm., 937; *C. & N. W. R'y Co. v. Swett*, 45 Ill., 201. The broken car was unnecessarily placed where it had to be used by the plaintiff, and the ordinary peril of his employment thereby greatly increased. The company cannot escape liability in this respect by saying that the fault was that of O'Brien, the conductor. The law requires that the servant be under no risk from imperfect or inadequate machinery. He does not assume the risk incident to the negligence of fellow servants in this respect. The duty of the employer is original, incessant and incapable of delegation. Wood on M. & S., § 405; *Smith v.*

*Railway Co.*, 42 Wis., 520; *Laning v. R. R. Co.*, 49 N. Y., 521; *Flike v. Railway Co.*, 53 id., 549. 3. Plaintiff was a subordinate, subject to the orders and control of O'Brien, and received the injury while obeying such orders. The negligence of O'Brien must therefore be held the negligence of the company itself. *C., C. & C. R. R. Co. v. Keary*, 3 Ohio St., 201; *Chamberlain v. Railroad Co.*, 11 Wis., 238; *Little Miami R. R. Co. v. Stevens*, 20 Ohio, 415; *Gillenwater v. R. R. Co.*, 5 Ind., 340; *Fitzpatrick v. R. R. Co.*, 7 id., 436; Parsons' note to *Waller v. Railway Co.*, 2 H. & C., 112; *Greenleaf v. R. R. Co.*, 29 Iowa, 14; *Buzzell v. Laconia Man. Co.*, 48 Me., 113; *Shanny v. Androscoggin Mills*, 66 Me., 420; *Snow v. Housatonic R. R. Co.*, 8 Allen, 441; *Gilman v. Railway Co.*, 10 id., 233; 13 id., 433; *Ford v. Fitchburg R. R. Co.*, 110 Mass., 240; *C. & N. W. Railway Co. v. Jackson*, 55 Ill., 492; *Brothers v. Cartter*, 52 Mo., 373; *Lewis v. Railroad Co.*, 59 id., 495; *Porter v. H. & St. J. R. R. Co.*, 9 Reporter, 549; *Corcoran v. Holbrook*, 59 N. Y., 517; *Booth v. R. R. Co.*, 73 N. Y., 38; *Braun v. Railway Co.*, 6 N. W. Rep., 5; Wood on M. & S. (1st ed.), 884–8, 900. See also *L. & N. R. R. Co. v. Collins*, 5 Am. Law Reg. (N. S.), 265; 2 Duv. (Ky.), 114; *Mann v. Oriental Mill Co.*, 14 Am. Law Reg. (N. S.), 725; *Mullan v. Steamship Co.*, 78 Pa. St., 25; *Bessex v. Railway Co.*, 45 Wis., 477; *Berea Stone Co. v. Kraft*, 31 Ohio, 492; *Schultz v. Railway Co.*, 48 Wis., 375. It was O'Brien's duty not only not to expose the plaintiff to this unusual danger, but by timely notice and warning to caution him, so that in the performance of his duties he might exercise all his faculties in protecting himself against injury. *Coombs v. Cordage Co.*, 102 Mass., 572; *Grizzle v. Frost*, 3 F. & F., 622; *Bartonshill Coal Co. v. McGuire*, 3 Macq., 300; *R. R. Co. v. Fort*, 17 Wall., 553; *Lalor v. R. R. Co.*, 52 Ill., 401; *O'Donnell v. A. V. Railroad Co.*, 59 Pa. St., 239; *Powell v. Railway Co.*, 32 id., 414; *Coates v. Canaan*, 51 Vt., 131; 38 Wis., 289; 41 id., 478; 42 id., 520; 45 id., 477; 36 id., 657; 48 id., 375.

*Charles W. Felker* and *Wm. F. Vilas*, for the respondent:

1. The nonsuit was properly granted, there being no evidence of negligence on defendant's part. A servant assumes, and must bear the consequences of, all risks and perils ordinarily incident to the service which he performs. And, as a necessary corollary, when a servant is injured in the course of a hazardous business, the injury is presumed to have been occasioned by some of the risks incidental to the employment; and the burden therefore rests upon the servant to show some specific negligence on the master's part which caused the injury. Shearm. & Redf. on Neg., §§ 87, 88; Wood on M. & S., § 346; *Greenleaf v. R. R. Co.*, 29 Iowa, 46; *Davis v. R. R. Co.*, 20 Mich., 122; *Wright v. R. R. Co.*, 25 N. Y., 562; *Hanrathy v. Railway Co.*, 18 Am. R'y Cas., 188. And when a servant, knowing the customs and usages of the master and the defects in the machinery or cars which he is employed to handle (or having the opportunity to know them by proper diligence), makes no objection, but voluntarily pursues the course of business and employs such imperfect machinery or cars, he is held to assume such extraordinary risks. *Sullivan v. India Man. Co.*, 113 Mass., 396; *Dorsey v. Constr. Co.*, 42 Wis., 598; *Dillon v. R. R. Co.*, 3 Dill., 319; *C. & N. W. R'y Co. v. Donahue*, 75 Ill., 106; *Muldowney v. R. R. Co.*, 36 Iowa, 470; *Way v. R. R. Co.*, 40 id., 343; *Davis v. R. R. Co.*, 20 Mich., 105; *Ft. W., J. & S. R. R. Co. v. Gildersleeve*, 33 id., 133; *Devitt v. Railroad*, 50 Mo., 305; *McGlynn v. Brodie*, 31 Cal., 376; *Thayer v. R. R. Co.*, 22 Ind., 26; *Gibson v. Railway Co.*, 63 N. Y., 449; *Lovejoy v. R. R. Co.*, 125 Mass., 79; *Fifield v. Railroad*, 42 N. H., 240; *T., W. & W. R. R. Co. v. Black*, 88 Ill., 112; *Skipp v. R. R. Co.*, 9 Exch., 223; *Haskin v. R. R. Co.*, 65 Barb., 134; *Woodley v. Railway Co.*, L. R., 2 Exch. Div., 384; *Assop v. Yates*, 2 H. & N., 768; *Griffiths v. Gidlow*, 3 id., 648; *Priestley v. Fowler*, 3 M. & W., 1; Cooley on Torts, 551-2. The movement of the broken car was shown to have been in accordance with the regular cus-

tom of the yard, for the purpose of having it inspected and repaired at the proper place. It was exactly the service which plaintiff was hired to perform, and, knowingly, had regularly performed. It was not a use of the car, but only a necessary and proper step toward preparing it for use. If there was risk in the service, it was one of the perils of the business in which plaintiff was engaged. *C. & N. W. R. R. Co. v. Ward,* 61 Ill., 130. 2. The plaintiff's own negligence contributed to the injury. Knowing that the cars were liable to be out of repair, and being engaged in a hazardous employment, the law imposed upon him great care and vigilance. When he attempted to get upon the car, a single glance as to where he was going to put his foot, would have shown him the defect. 3. If there was any other negligence than that of the plaintiff, it was that of O'Brien. But O'Brien was his fellow-servant, working in the same department of labor, to accomplish the same objects, in the same way, and with the same instruments. For his negligence, therefore, the company is not liable to the plaintiff. *Chamberlain v. R. R. Co.,* 7 Wis., 425; *Moseley v. Chamberlain,* 18 id., 700; *Cooper v. Railway Co.,* 23 id., 668; *Strahlendorf v. Rosenthal,* 30 id., 674; *Anderson v. Railway Co.,* 37 id., 321. If O'Brien had the direction of the business and was of a superior grade in the service, the rule should not be different. Such an exception can be allowed only in pursuance of a purpose to break down the rule itself. Shearm. & Redf. on Neg., § 100; Wood on M. & S., §§ 425-6, 435; *Wright v. R. R. Co.,* 25 N. Y., 562; *Sherman v. R. R. Co.,* 17 id., 153; *Hofnagle v. R. R. Co.,* 55 id., 608; *Weger v. Railroad Co.,* 55 Pa. St., 460; *Thayer v. R. R. Co.,* 22 Ind., 29; *Hutchinson v. Railway Co.,* 5 Exch., 343; *St. L. & S. E. Railway Co. v. Britz,* 72 Ill., 256; *Warner v. Railway Co.,* 39 N. Y., 470; *Gilman v. R. R.,* 10 Allen, 233; *Feltham v. England,* L. R., 2 Q. B., 33, 1866; *Gallagher v. Piper,* 111 Eng. C. L., 669. See, also, *Hanrathy v. R. R. Co.,* 18 Am. R'y Cas., 188; *Wigmore v. Jay,* 5 Exch., 354; *Wiggett*

*v. Fox*, 11 id., 832; *Davis v. Railway Co.*, 20 Mich., 105. But the alleged superiority of O'Brien is immaterial in this case. It had nothing to do with the injury. He gave no order which was not proper to be given, in the ordinary course of the business.

COLE, C. J. The learned circuit judge granted the nonsuit in this case on the ground that the undisputed testimony showed that the plaintiff was guilty of contributory negligence. In his opinion the learned circuit judge says that it was proper to advert to the nature of the plaintiff's employment, and to consider whether it did not impose upon him more than ordinary diligence, or the diligence of an ordinary switch-man, while performing his services. The learned judge states that it was quite apparent, by reason of the duties that were cast upon plaintiff by his employment, that he must have known it was more hazardous than the usual employment of a brakeman on the road; that he knew it was the custom in the yard to take all cars which had been used for bringing ore to Escanaba down to the repair shops for inspection; knew it frequently happened that cars which were out of repair were taken down there, together with cars which did not need repair; and that a knowledge of these facts imposed upon him more care than would have been incumbent upon him under other circumstances. Consequently the judge held that when the plaintiff sought to climb upon cars which he was thus engaged in handling, and which were liable to be out of repair, he was bound to realize that fact, and not attempt to step upon the jaw-brace without looking to see where he was placing his foot, and not taking it for granted that the brace was there in its place because braces were usually on the cars. There is certainly very great force in this view of the case, but we are disposed to affirm the judgment for the reason that there was no sufficient evidence of negligence on the part of the company to carry the case to the jury.

When this case was here on a former appeal (45 Wis., 98), it was decided that no negligence on the part of the company could be predicated upon the delay in removing the broken car from the end of the spur track, where it was broken. It was also decided that the law did not impose upon the defendant the duty of repairing the car upon the track where it was broken, but that it had the clear right to remove it to its repair yard, where such work was usually attended to. These propositions would seem to be so well founded in reason and common sense as to need no illustration or argument to support them; for a moment's reflection must satisfy any mind that it would be practically impossible for a railroad company to repair its broken cars along the line of its road where they might happen to be wrecked. Machinery appliances, together with skilled workmen, are generally needed to make repairs; and hence there is a necessity for removing broken cars to shops or yards where these can be secured. It is true, the testimony shows that the broken brace on this car might have been repaired on the track where it stood; but it appears that the company had a rule or custom of sending all cars, after they were unloaded of ore, down to the repair shops for inspection. This would seem to be a reasonable way of doing business, and the custom was well known to the plaintiff.

But, says the learned counsel for the plaintiff, the law imposes upon the company the duty of furnishing safe and suitable machinery and appliances for the transaction of its business, and it has no right to increase the perils of the employment of its servants by a failure to perform that duty. But that proposition of law can have no application to the facts of this case; certainly not in the sense in which it is sought to apply it. No question is made but that the car in question was in good order, furnished with a suitable brace, when it was purchased by the company. But, in the hard, rough business in which it was used, of transporting ore, it was broken. It then had to be sent, with all other cars used

in this business, to the usual place for repairs and inspection. Indeed, Mr. Justice LYON, in his opinion on the former appeal, gives a complete and perfect answer to the argument urged upon us upon this point. He says: "Cars and engines are frequently damaged, and it becomes necessary to remove them to some proper place for repairs; and it may happen that they are so seriously damaged that their removal will be attended with some personal danger to those engaged in the work. Yet this is one of the perils of the business, and if a person so employed is injured because of the broken and unsafe condition of the car or engine, he has no remedy against the owner, unless such owner has been otherwise negligent." Page 104.

The plaintiff was well acquainted with the hazards of this business of handling cars in and about the yard, when he entered upon and continued in the employment in which he was engaged. He knew that in every train which came to Escanaba loaded with ore some cars were found to be more or less injured or broken. He voluntarily assumed the risks attendant upon this employment. But it is said that it was an act of negligence on the part of the defendant to place the car with the broken jaw-brace in a train with other empty cars for the purpose of sending them all together to the repair yard for inspection. Yet it clearly appeared that this was the method the company had for doing its business in the yard; and, considering the fact that 400 or 500 cars a day were handled about the yard, it is plain it would have been utterly impracticable to move each car by itself.

Another act relied on as showing actionable negligence on the part of the company, was the order given the plaintiff by O'Brien, directing him to get off the train when it was moving from the stock dock, turn the switch No. 12, and then jump on the second car from the engine and pull the pin, so as to send the empty cars down to the repair yard. It is said that O'Brien was foreman of the gang in which the plaintiff

was engaged, and if he directed the plaintiff to climb upon a car with a broken brace, and, in obeying that order, the plaintiff was injured, the company is responsible. What the rule of law should be in case it appeared that it was the duty of O'Brien to inspect or know the condition of the cars he was moving in the yard, or if he actually knew that the second car, which he directed the plaintiff to climb upon, had a broken brace, is a question not free from difficulty upon the authorities. The question was ably discussed on the argument, but we do not think it arises in the case.

In *Brabbits v. Railway Co.*, 38 Wis., 289; *Smith v. Railway Co.*, 42 Wis., 526; *Bessex v. Railway Co.*, 45 Wis., 477, and *Schultz v. Railway Co.*, 48 Wis., 375, this court had occasion to consider somewhat the liability of a railway company to a servant for injuries sustained in his employment, caused by the neglect of another servant to perform some duty which the company had imposed upon the latter. It will be seen, from these and other decisions, that this court has not gone as far as some others, either in exempting the corporation from liability in such cases, or in holding it responsible. The liability of the company in some cases is made to depend upon the grade or rank of the employee whose negligence caused the injury. But, as we have said, the question cannot well be considered here, because there is not a scintilla of evidence that it was the duty of O'Brien to inspect the cars he was moving, or that he knew the second car, which he directed the plaintiff to get onto, had a broken brace. O'Brien, with a gang consisting of the plaintiff, an engineer and a fireman, were engaged in unloading cars which came to the yard, and in moving and handling them from one place to another therein. All were really engaged in the same service, chargeable with the same duty. There is no pretense that O'Brien had actual knowledge that the second car from the engine was out of repair. On the contrary, the plaintiff had equal if not greater opportunities than any one of the gang for discovering the

defect in the car which he was directed to climb onto.   There is no more ground — perhaps not as much — for imputing negligence to O'Brien, because he was ignorant that that car was broken, than to the plaintiff.   Both the plaintiff and O'Brien had about the same means of observing defects in the cars which they were moving, so far as the evidence shows.   Both knew very well they were engaged in handling cars which, from the use to which they were put, were liable to be broken, and were found to be frequently out of order.   But still the plaintiff assumed the risk incident to the service, knowing all about the danger which attended it.   Besides, in this case, the defect in the car which he attempted to climb upon was plain and visible — one which he could not fail to see had he looked where he was placing his foot.   Therefore, under all the circumstances, we think there is no ground for imputing negligence to the defendant because the jaw-brace was broken on this car, which was being removed to the proper place for repairs.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.