Argued May 4, decided July 6, 1909.

## BRASEL *v.* OREGON R. & N. CO.

[102 Pac. 726.]

MASTER AND SERVANT — INJURIES TO SERVANT — NEGLIGENCE OF SERVANT.

1. Plaintiff was an old and experienced workman, whose work in part was cleaning locomotive boilers, both in and out of repair, so that he could not fail to know that there was a possibility that an engine on which he was required to work would be undergoing repairs. Before beginning on an

engine he consulted the engineer's work report, which contained items of repairs to be made thereon, and though the item requiring the boiler to be cleaned was first on the report, and he did not read further, he could not help seeing that other items thereon called for other work on the engine, so that he was put upon notice that other work was to be done. Before he began work the jacket and hand rail on the side of the engine had been removed by other workmen, and plaintiff, without inspecting the boiler to avoid danger, climbed onto the running board with a hose, and, losing his balance, fell off, because there was no hand rail to hold to, and was injured. *Held,* that he was negligent, and could not recover.

MASTER AND SERVANT—ASSUMPTION OF RISK—NEGLIGENCE OF FELLOW SERVANT.

2. Plaintiff and the other workmen working on the engine being fellow servants, he assumed the risk of the other's negligence, if any, and the master's foreman owed no duty to caution each one to beware of the operations of the others.

MASTER AND SERVANT — ASSUMED RISKS — NECESSARY INCIDENT OF EMPLOYMENT.

3. The removal of the hand rail being a necessary part of the labor to be done on the engine, the risk of injury from its absence was a risk assumed by plaintiff.

From Union:   JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action brought by Ezra S. Brasel on account of injuries received by him from a fall from the running board of one of defendant's locomotives.   Plaintiff was employed by defendant, at its roundhouse and repair shop at La Grande, as a boiler washer and cleaner.

The complaint alleges, in substance, that on the day of the accident he was engaged in washing and cleaning a boiler, in defendant's roundhouse, by means of a hose furnished by defendant; that, for the purpose of access to such boiler, it is the custom, and necessary, to have a foot-board, commonly called a "running board," for the use of employees while working upon the engine, and that such board actually was so attached and in place at the time of plaintiff's injury; that it is the custom, and is necessary, required, and indispensable, for the safety of employees, while engaged in washing or cleaning boilers, to have in place on the engines and boilers, above the running board, a rail, called a "hand rail" so situated that employees, while walking or standing on the running board, may grasp it and prevent themselves.

from falling, and that the rail was particularly necessary and indispensable for the safety of plaintiff in the kind of labor he was there performing, and its absence rendered the place unnecessarily dangerous and unsafe; that at the time plaintiff was performing his work a steam pipe had been partially detached and allowed to extend four or five inches from its accustomed place away from the boiler and toward the foot board, and that plaintiff had no notice or knowledge of the condition of the pipe when he began work, and no notice or knowledge that it was not in its customary place; that defendant had carelessly and negligently removed the hand rail from the boiler and engine before plaintiff went to work, and that plaintiff had no notice or knowledge that it had been removed; that, while on the running board in the prosecution of the work, the nozzle of the hose struck against the projecting steam pipe and caused him to lose his balance; and thereupon, to save himself from falling, he attempted to grasp the hand rail, but, by reason of its having been removed, he fell and fractured his leg. The complaint is very full in its allegations of negligence, but, for the sake of brevity, all but a bare outline is omitted.

The answer denies the material allegations of the complaint, and alleges contributory negligence, the negligence of fellow servant, and assumption of risk. The verdict and judgment were for defendant, and plaintiff appeals.

Affirmed.

For appellant there was a brief with oral arguments by *Mr. Leroy Lomax* and *Mr. Gustav Anderson.*

For respondent there was a brief over the names of *Mr. William W. Cotton, Messrs. Cochran & Cochran,* and *Mr. Arthur C. Spencer,* with oral arguments by *Mr. Charles E. Cochran* and *Mr. Spencer.*

Mr. Justice McBride delivered the opinion of the court.

The evidence of plaintiff and his witnesses tended to show that the roundhouse and repair shop of defendant

was a building semi-circular in form, not very well lighted, but sufficiently light to enable a workman to prosecute his labors without the aid of artificial light; that the engine in question had been brought into one of the stalls in the roundhouse and "spotted" for repairs; that, according to the regular custom, the engineer of the locomotive in question had filed his report, which was entitled in capital letters as follows:

ENGINEER'S CONDITION OF ENGINE AND WORK REPORT.
WORK NEEDED.

Wash boiler.
Stay bolts leaking outside and inside of cab.
Straight air will not work.
Injector steam pipes leak at union on valve.
Inside of cab, air leaks bad.
Put dope plug on R. B. side rod.
Clean out gauge cocks.

The custom of the employees was to look over this report and then get their orders from the superintendent. Plaintiff testifies that, before going to work on the engine, either he or his helper blew it off, and while it was cooling he was engaged in some other part of the building. He also assisted in placing blocks under the wheels preparatory to beginning work. At noon his helper told him that the boiler was ready to wash, and he went back and began his work. While he was away, however, and before he returned, workmen engaged in other repairs had removed a section of the jacket from the engine and taken off the hand rail, in order to get at the stay bolts, which required some repair, and had left the steam pipe projecting a few inches from the boiler and above the running board, which is about 20 inches wide, running the entire length of the boiler and about four or five feet below the hand rail, which may be grasped by persons using the running board to steady themselves when necessary. The plaintiff walked from the front to the rear end of the engine and used the

hose, in washing the engine, at one of the plugs just in front of the cab, and moved forward to insert the nozzle of the hose in another plug, and, while so doing, struck the nozzle on the projecting steam pipe and fell. He testified that he grabbed for the hand rail, and that if it had been in place he could have saved himself; that he had not observed the absence of the rail, or the fact that part of the jacket had been removed, or that the steam pipe was out of place; that the water in the hose was turned off at the nozzle, which, together with the fact that it was a new hose and very stiff, and that there was a heavy pressure of water from the pump, made it hard to handle, so that he had to pass it between his legs and hold the nozzle with both hands, in order to handle it, and that this took all his time and attention. Plaintiff also testified that he sometimes washed boilers when they were stripped, and sometimes otherwise, but very seldom washed one in this condition. His helper, Mr. Collyer, testified to the same general state of facts, and saw that the locomotive was stripped and the steam pipe out of place before plaintiff went to work. He stated that they sometimes washed boilers with the jackets off but not often. In order to do the work necessary to repair the engine it was essential to take the jacket off the boiler. After plaintiff was hurt he finished washing the boiler without the hand rail being attached. Kenneda, another witness, testified that he went to the engine immediately after the accident; that as soon as he came by the side of it he noticed that the steam pipe was projecting, the jacket stripped, and the hand rail gone, indicating that repairs were being made, though no one was working at the time. Leavitt, another witness, testified to the general situation in the roundhouse and was present just after plaintiff fell. On cross-examination witness testified that when a boiler was ordered to be washed the employee would usually do a great deal of work on it, because it was almost a certainty that it would be

in all day, and they would figure on doing considerable work on it. Plaintiff also testified that on the morning of the accident he looked at the engineer's report under the head of "work needed," but as the words "wash boiler" came first he did not read the remainder. The general tendency of the evidence, of which the foregoing is only an outline, tended to show that plaintiff's injury would not have occurred if the hand rail and steam pipe had been in their usual positions.

1. We do not see how plaintiff could possibly recover in this case. He was an old and experienced workman, and his business was carried on in a place devoted, in part, to the repair of locomotives. He had been called upon to wash and clean boilers upon locomotives which were in repair and out of repair, and could not fail to know that there was a probability or, at least, a possibility that the one upon which he was directed to work was being repaired. In addition to this he admits that he saw the engineer's report and read the first item, which was one pertaining to his own special duties. He says that he did not read the other items, but he could not glance at the first one without seeing that there were others, and thereby being put upon notice that this very locomotive would require other work done upon it than that which he was required to perform. In other words, both by the nature of his employment and the fact that a report of "work needed" had been subject to his inspection, he could not fail to be put upon notice that he might not find a perfect engine with every appliance convenient for his safety ready at his hand. Under such circumstances it was his duty to make reasonable inspection of the boiler upon which he was to work, and to avoid dangers that might arise from the necessary operations of his fellow workmen.

2. Plaintiff's duties were a part of a general plan, the result of which would be to put the locomotive in working order. His part of the work was to cleanse the

inside of the boiler of dirt and scales. The duty of other workmen was perhaps to strip the outside and remove the jacket and rail so that still another class of laborers could have access to defective staybolts. They were all fellow servants and each took upon himself the risk of the others' negligence, if any occurred. It was no part of the duty of the foreman, when he gave the workmen orders to go to work on this engine, to caution each one to beware of the operations of the other.

3. Plaintiff's evidence shows that removing the rail was a necessary part of the labor, and it was among the risks that he assumed when he went to work upon what his previous experience should have suggested might be a defective engine. *Branham* v. *Camden Cotton Mill,* 61 S. C. 491 (39 S. E. 708) ; *Gulf, C. & S. F. Ry. Co.* v. *Jackson,* 65 Fed. 48 (12 C. C. A. 507) ; *City of Minneapolis* v. *Lundin* 58 Fed. 525 (7 C. C. A. 344) ; *Burke* v. *Nat'l India Rubber Co.,* 21 R. I. 446 (44 Atl. 307). Had plaintiff made even the slightest inspection he would have discovered the absence of the hand rail and the position of the steam pipe. His helper was able to see the conditions. Witness Kenneda says that he noticed that the rail was gone and the pipe misplaced as soon as he came beside it. It is evident that if plaintiff had paid the slightest attention to conditions about him he would have found that the steam pipe was out of place and the hand rail gone. We are forced to the conclusion that his accident was due to plaintiff's neglect to use reasonable care, or, in any case, to observe conditions which any one ought to have noticed.

Defendant moved for a nonsuit which was refused, and, after such refusal, adduced testimony and asked for a directed verdict. We have not discussed the testimony on behalf of defendant for the reason that we think the court should have granted, on plaintiff's own showing, defendant's motion for nonsuit, and no

evidence introduced by defendant tended to strengthen plaintiff's case. At no stage of the case was plaintiff ·entitled to a verdict. On the other hand, the court should have directed a verdict for defendant. Holding these views it is needless to discuss, in detail, the errors alleged as to the rulings of the court on the admission of certain testimony or the exceptions taken to the instructions, holding, as we do, that the court should have directed a verdict in any event, and that there is an entire absence of testimony showing actionable negligence on the part of defendant. We have, however, carefully considered the alleged errors, both as to the admission of evidence and as to the instructions, and, notwithstanding the able and ingenious argument of counsel for plaintiff, we are not convinced that there was error in the rulings of the lower court.

The judgment of the circuit court is affirmed.

AFFIRMED.