Argued October 28, affirmed December 15, 1914, rehearing denied January 19, 1915.

## PFEIFFER v. OREGON-WASHINGTON R. & N. CO.*

(144 Pac. 762.)

**Evidence—Secondary Evidence—Admissibility.**

1. Under Section 712, L. O. L., providing that there shall be no evidence of the contents of a writing other than the writing, except when the original cannot be produced with proper diligence, and its absence is not owing to neglect, and Section 782 requiring that the original writing be produced and proved, except as provided in Section 712, an engineer suing for injury in a collision, who shows that he received a work order which he had not seen since the accident, but that he served a demand on the railroad company to produce orders issued to him and his conductor on the date of the accident, and that the company did not produce the order, may prove the contents thereof.

**Master and Servant—Injury to Servant—Violation of Rules—Evidence.**

2. Plaintiff, an engineer, directed to pick up a defective engine at a passing track and tow it to a station, was informed by the engineer of the defective engine that it was dead. Plaintiff then informed the engineer that he would come in and get the engine. Plaintiff thereafter directed his brakeman to cut off his engine from the train

---

*On the question of the servant's contributory negligence in disobedience of master's orders, see note in 24 L. R. A. 657. And as to the duty of the servant in regard to the rules promulgated by his employer, see note in 43 L. R. A. 350.

Upon the liability of the master for injuries sustained by the servant in taking a defective car or engine to the shop for repairs, see note in 25 L. R. A. (N. S.) 335.

The question of the constitutionality, application and effect of the Federal Employers' Liability Act is discussed in a note in 47 L. R. A. 38.                                                REPORTER.

on the main line, and then passed several hundred feet beyond the switch of the passing track, and while working on his engine to enable him to complete his run, with a torch placed on the step of the pilot, the engineer in charge of the defective engine moved the engine on the main track and ran against plaintiff's engine, in violation of signals. Plaintiff had no knowledge that the defective engine would be moved from the passing track. *Held*, that plaintiff did not, as a matter of law, violate a rule of the company requiring engineers, while switching, to remain on the engine, and whether plaintiff, in leaving his engine to make the repairs, was guilty of negligence was for the jury.

[As to disobedience of rules by employee sustaining personal injuries, see note in Ann. Cas. 1912A, 85.]

#### Master and Servant—Injury to Servant—Negligence—Instructions.

3. In an action for injuries to an engineer in a collision while on the ground repairing his engine, so as to enable him to complete his run, an instruction that, if the engineer got off his engine while a switching movement was being had, he violated a rule of the company, and, if he could have avoided the injury by obeying the rule, he was guilty of negligence, as a matter of law, sufficiently gave effect to a rule requiring engineers to remain on the engine while switching, and was sufficiently favorable to the company.

#### Trial—Instructions—Refusal of Instructions Covered by the Charge Given.

4. Where, in an action under the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65, as amended by Act April 5, 1910, c. 143, 36 Stat. 291 [U. S. Comp. Stats. 1913, §§ 8657–8665]), for injuries to an engineer in a collision, the court charged that if the engineer did what a prudent engineer would not have done, or failed to do what a prudent engineer would have done, under the circumstances, he was guilty of negligence, and, if the acts of other employees of the company were not the proximate cause of the injury, the verdict must be for the company, and, if the engineer's negligence was alone the cause of the accident, the verdict must be for the company, the refusal to charge that, if the accident was solely caused by the engineer's violation of a rule of the company, he could not recover, and if partly caused by his act he could not recover full damages, was not erroneous because the requested instruction was in substance given.

#### Master and Servant—Injury to Servant—Contributory Negligence— Question for Jury.

5. Whether an engineer injured in a collision was guilty of contributory negligence, and the extent to which the contributory negligence, if any, contributed to the injury, *held*, under the evidence, for the jury.

#### Master and Servant—Injury to Servant—Federal Employers' Liability Act—Contributory Negligence.

6. Contributory negligence is, under the Federal Employers' Liability Act, only a partial defense, so that it is necessary in a case, otherwise proper, to submit the issue of contributory negligence to the jury, so that the same may be compared with the negligence of the employer and the damages awarded in proportion to the negli-

gence of the parties, and the right of the court to declare the employee's guilt of contributory negligence, as a matter of law, should only be exercised where it is plain from all the evidence that only the conclusion of contributory negligence could be reasonably deduced.

[As to comparison of negligence under Federal Employers' Liability Act, see note in Ann. Cas. 1914C, 175.]

**Master and Servant—Injury to Servant—Assumption of Risk.**

7. A servant employed to repair a defective appliance assumes the risks obviously incident to the work, and he cannot complain of the appliance being defective.

**Master and Servant—Injury to Servant—Federal Employers' Liability Act.**

8. Where an engineer, directed, while operating an interstate train, to tow to a station a defective engine on a passing track, was injured by the negligence of the engineer in charge of the defective engine in operating it in violation of rules and signals, the railroad company was liable, though, under the Federal Employer's Liability Act, the company was not liable for injuries caused by the defective condition of the engine while running the same to a place for repairs.

**Trial—Instructions—Ignoring Evidence.**

9. A requested charge, which ignores evidence on an issue or fails to allow the jury to determine the issue from all the evidence, is properly refused.

**Master and Servant—Injury to Servant—Federal Employers' Liability Act.**

10. Under the Federal Employers' Liability Act, a railroad company is liable for injury to an employee resulting from a defect or insufficiency, due to its negligence, in its cars, engines and appliances.

From Union: John W. Knowles, Judge.

In Banc.   Statement by Mr. Justice Bean.

This is an action by H. M. Pfeiffer against the Oregon-Washington Railroad & Navigation Company, a corporation, for negligence under the Federal Employers' Liability Act. A verdict was rendered in favor of the plaintiff, and, from a judgment entered thereon, the defendant appeals.

The gist of the alleged negligence of the defendant is that one J. W. Hampson, an engineer of the defendant, recklessly, carelessly and negligently moved engine No. 533, in his charge, from its position on a passing track, without any headlights, without blowing the

engine whistle, without ringing any bell, and in defiance of a stop signal given him by lantern light by an employee of the defendant; that he ran said engine in and upon the main line of the defendant against the engine of which the plaintiff had charge, and upon which he was working, with such force and violence that plaintiff's engine No. 544 was driven forward, the cylinder thereof striking the plaintiff in the back and throwing him with great force upon the track in front of the wheels of the engine, which ran over the left arm and hand of the plaintiff, thereby injuring him. Issues were raised by the answer. The defendant alleges that the injury was caused by the negligence of the plaintiff, and that he assumed the risk of the injury as an incident to his employment. A reply was filed putting in issue the new matter of the answer.

It appears from the record that the evidence tended to show substantially the following circumstances: On May 22, 1913, the defendant was operating a train called "Extra 533 West," which was in charge of Engineer Hampson and Conductor King. This train had orders to run from Pendleton to Umatilla. Upon arriving at Pilot Rock Junction, four or five miles west of Pendleton, a defect appeared in the engine, by reason of which sufficient steam pressure could not be secured to complete the run, and the crew were compelled to go on a passing track. They phoned the dispatcher at La Grande for help. Another train, known as "Extra 544 West," was operated by the defendant in the same direction and was in charge of Engineer Pfeiffer, plaintiff, and Conductor Carney. This latter train was running to Umatilla under orders received at La Grande. At Pendleton, between 9 and 10 o'clock P. M. of May 22d, Conductor Carney received a message from the defendant's dispatcher directing that their

train receive engine 533 and tow it to Umatilla.   The
train in charge of Hampson and King consisted of an
engine and caboose.   After receiving this order,
Pfeiffer's train proceeded west to Pilot Rock Junction
and stopped at a point opposite and about 50 or 75 feet
from the Hampson engine.   Fulton, the brakeman,
who was riding on the engine from Pendleton, got out
of the cab, and by direction of Pfeiffer went back and
cut off the latter's engine from his train, signaling him
forward.   When his train was cut off, plaintiff discov-
ered that the box of the engine truck was hot and
blazing.   He ran his engine about 275 or 300 feet west
of the switch of the passing track where the ground
was suitable, stopped the engine, set the brakes, and
stepped down to give the hot box necessary attention.
Fulton dropped off at the switch and lined the same for
the passing track. . Pfeiffer applied a stream of cold
water through a hose fastened by a wire to the oil-box
to cool the same, in order that he could make his run.
In doing this, it was necessary for him to get down on
the ground on one knee in front of the engine cylinders
and drive-wheels to make the fastenings; his position
being immediately above the rail and in the rear of the
pilot.   A lighted torch which he carried was placed on
a step of the pilot.   The plaintiff asserts that engine
No. 533 was on the sidetrack east of where he was do-
ing this work and in plain view of his engine and torch.
Brakeman Fulton, who threw the switch, walked up
the passing track to engine 533 and ascertained that it
had some steam and could come out on to the main
line.   Seeing the engine of plaintiff standing on the
main line west of the switch and the torch burning,
Fulton signaled Hampson to move engine 533 on to the
main line through the switch.   The plaintiff had no
knowledge of this signal to move No. 533 from the side-

track. As soon as Hampson had cleared the switch on the main line, and when he was about 200 feet from where plaintiff was at work, Fulton signaled him to stop. Hampson failed to obey this signal and conducted his engine forward past the block or danger signal and against the engine of plaintiff with such force that he broke the coupling knuckle and pin and drove plaintiff's engine forward several feet, forcing the cylinder against the plaintiff's back and the wheel over his left arm, throwing him to the ground and injuring him. AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Charles E. Cochran, Mr. Arthur C. Spencer, Messrs. Crawford & Eakin* and *Mr. William W. Cotton,* with oral arguments by *Mr. Cochran* and *Mr. Thomas H. Crawford.*

For respondent there was a brief with oral arguments by *Mr. R. J. Green* and *Mr. Francis S. Ivanhoe.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. It is first assigned that the trial court erred in permitting the plaintiff to testify to the contents of a work order sent to him from La Grande, directing that engine 533 be taken from Pilot Rock Junction to Umatilla. The defendant claims that no proper foundation was laid as a basis for secondary evidence. In regard to this, plaintiff asserted that while at Pendleton he received an order concerning what he should do at Pilot Rock Junction; that after he got hurt he left his orders in the engine; and that he had not seen that order since. It was disclosed that a demand was served upon the defendant to produce the orders issued to the plaintiff and his conductor on the date of the

accident. All the train orders were furnished by defendant, and plaintiff examined the same. The order in question, being a "work order" and not a "train order," was not contained in the package. A request made to defendant's counsel for a copy of the order elicited the information that the defendant did not have such copy. Whereupon, over the objection and exception of defendant's counsel, plaintiff was permitted to state from memory the contents of the order as follows:

"C. and E. Extra 544 West, Pendleton, Oregon: Engine 533 and crew is dead at Pilot Rock Junction. Pick them up and take to Umatilla. L. D. I."

The controversy in regard to the contents of the order appears to be concerning the information therein that engine 533 was "dead." Section 782, L. O. L., requires the original writing to be produced and proved, except as provided in Section 712. We think the evidence shows the question to be embraced within that part of the provisions of Section 712, L. O. L., which is as follows:

"There shall be no evidence of the contents of a writing, other than the writing itself, except in the following cases: * * (2) When the original cannot be produced by the party by whom the evidence is offered, in a reasonable time, with proper diligence, and its absence is not owing to his neglect or default. * * "

It fairly appeared that the original document could not be procured by the plaintiff with proper diligence, and that the absence thereof was not due to his negligence or default. There was no error in overruling the objection.

2. It is next contended that the plaintiff violated rule No. 882 of the defendant company, which reads:

"While switching, the engineman and fireman must remain on the engine.    Exercise great care in handling engine while yardmen and others are making couplings, and give close attention to signals."

Rule No. 26 of the company directs as follows:

"A blue flag by day and a blue light by night, displayed at one or both ends of an engine, car or train, indicates that workmen are under or about it.    When thus protected, it must not be coupled to or moved. Workmen will display the blue signals, and the same workmen are alone authorized to remove them."

Among the rules of the company introduced in evidence are the following:

"Rule 899.    Engines must not be left without man in charge, except at designated places, and must not be left standing in such position as to block movements on adjoining tracks.    Never allow engine to stand on main track unless properly protected under the rules."·
"Rule 901.    Exercise caution and good judgment in starting and stopping trains to avoid violent or sudden movements which might cause discomfort or injury to passengers, or damage to property."

The defendant contends that, on account of the violation of rule 882, the plaintiff was guilty of negligence, as a matter of law, and that the court erred in not so charging the jury.

The evidence of the plaintiff tends to show the following circumstances in addition to those above related: When opposite engine 533 on the passing track, plaintiff was told by Engineer Hampson that his engine was "deader than hell."    Plaintiff told Hampson he would "come in and get him."    Pfeiffer than directed his brakeman to cut off his engine from the train on the main line, and passed west about 275 or 300 feet beyond the switch of the passing track.    While Pfeiffer was working on his engine, as heretofore described, his

torch was placed on a step of the pilot on the right side looking west, and the block signal between his engine and the switch displayed a red light. Fulton, the brakeman, went up the passing track to engine 533, and, upon being informed by Hampson that his engine had steam enough to move out upon the main track, signaled him to move out over the switch, which Hampson did. As soon as he had cleared the switch, when about 200 feet from where the plaintiff was at work, Fulton signaled him to stop. It was the duty of the engineer to obey the signal, but Hampson failed to do so, and ran his engine forward past the block signal, which indicated danger, and against the plaintiff's engine with such force that it broke the coupling knuckle and pin thereof and drove the engine against the plaintiff, causing the injury. The plaintiff had no knowledge at the time that Fulton had signaled engine 533 to move from the side track. Under the circumstances of this case, we fail to see how the court, as a matter of law, could charge the jury that the plaintiff was guilty of negligence in getting down from his engine to attend to a hot box, a matter in the nature of repairs. It is shown that there was a cessation in the movement of the plaintiff's engine, and the same was stopped. The plaintiff had run farther west than necessary to clear the switch for another purpose, and was attending to an incidental matter. The plaintiff's attention at that time is not shown to have been directed to the detail of switching, but rather to the preparation of his engine for the contemplated completion of his run. The work of switching appears to have been taken up by Hampson, the other engineer. It is a grave question whether the plaintiff was at that time "switching," within the meaning of the rule. Suppose there had been a railroad tie or obstruction

on the track at that place, could the court say, as a matter of law, that it would have been negligence on the part of the engineer to get down from his engine for the purpose of removing it? We think not. As to any instruction in regard to the meaning of the rules, they appear to be couched in plain language, and we fail to discover any necessity for an explanation thereof by the court to the jury. The questions arise as to the facts to which the rules may or may not apply, and not to the construction of the rules themselves. Their reasonableness and sufficiency were not in question, as in the case of *Little Rock & M. R. Co.* v. *Barry,* 84 Fed. 944, 949 (43 L. R. A. 349, 28 C. C. A. 644), cited by defendant's counsel. The jurors, as reasonable men, might draw from the evidence a conclusion different from that assumed by the position of defendant, and we think the matter of the alleged negligence of the plaintiff comes within the general rule and was a question of fact to be submitted to the jury. For the law bearing upon this rule, see instruction 19 (defendant's request 14, hereafter quoted): See, also, *Cummings* v. *Wichita R. R. & L. Co.,* 68 Kan. 218 (74 Pac. 1104, 1 Ann. Cas. 708); 5 Thompson, Neg., § 5408.

3. Upon this point the court charged the jury as follows:

Instruction 23 (parts of defendant's requests 10 and 11): "There have been introduced in evidence, and are undisputed in character, the rules and regulations of the transportation department of the defendant which were in force on the day the accident in question occurred, and your attention is directed to the provisions of one of them as follows: 'No. 662. While switching, the engineman and fireman must remain on the engine.' * * So I shall instruct you that, if you find that the plaintiff got off his engine while a switching movement was being had, then he has violated one of said

rules, and, if he could have avoided injury by obeying said rule, then he is guilty of negligence, as a matter of law, and, if such negligence was the sole proximate cause of the injury, then plaintiff cannot recover. If partly the cause of the injury, then you must compare the same under the rules of law I shall give you hereafter.''

By instruction 23 the trial court plainly charged the jury that if the plaintiff got off his engine while a switching movement was being had, he violated one of the rules, and if he could have avoided the injury by obeying said rule, then he was guilty of negligence, as a matter of law. The court gave full force and effect to this rule without any condition whatever. This instruction was as favorable to the defendant as could reasonably be expected.

4. Then it was asked by defendant's requested instruction 11a that the question be submitted to the jury as follows:

''If the accident was solely caused by the plaintiff's violation of said rule, then plaintiff cannot recover; if partly caused by plaintiff's act, then I instruct you that plaintiff cannot recover full damages, but your duty is to make comparisons hereafter stated; that is to say, if the act was partly caused by the negligent act of Engineer Hampson and partly by the plaintiff's act just mentioned, then these acts of negligence must be compared in the way which I will make plain to you in other instructions.''

The refusal to give the requested instruction is assigned as error. We see no fault in this portion of the request. Let us then examine the charge given to ascertain whether or not the same was given in substance if not in the exact language as requested. By instruction 19 (defendant's request 14) the court directed the jury as follows:

"In this same connection you have no doubt observed from the testimony, as well as from the pleadings, that the plaintiff's participation in the transaction complained of has been alleged to be negligent in character. Now, the plaintiff's negligence, if you find he was negligent, is defined in the same manner as that of the defendant. If you believe from the evidence that he did an act or number of acts which a prudent engineer would not have done, or if he failed to do an act or number of acts which an ordinarily prudent engineer would have done under all the existing circumstances, having in view the probable danger of his receiving an injury, then I charge you that he is, with respect thereto, guilty of negligence; and if his acts, if any you find, were the proximate cause of the injury, and if you further find that the acts, if any, of the defendant and its employees were not the proximate cause of the injury, then it will be your duty to find a verdict for the defendant. And in this connection, if you believe from the evidence that plaintiff's injury was caused partly by one or more of the negligent acts of the defendant, mentioned in the complaint, and one or more of the negligent acts of the plaintiff, as mentioned in the answer, then it will be your duty to compare the same in accordance with the instructions which I shall give you."

In the latter part of instruction 20 (defendant's request 15) the court charged the jury as follows:

"In order to make clear to you what is meant by the comparison of negligence, declared by federal law to be the duty of the jury to make, let me say that your first inquiry should be: Was the defendant guilty of negligence? Your second inquiry should be: Was the plaintiff negligent? Your third inquiry should be: In what degree did these causal negligences contribute to the accident? And I say to you, as a matter of law, that you must determine that proportion. If the plaintiff's negligence contributed or caused, we will say, the accident to the extent of one third of the entire negligence, then the plaintiff's damages would be

reduced by one third; if to the extent of one half, then his damages would be reduced by one half; if to the extent of two thirds, then his damages would be reduced by two thirds; and if his negligence was alone the cause of the accident, then of course that would wipe out the damages, and your verdict would be in favor of the defendant."

It is apparent that it was made plain to the jury by the charge of the court that, if plaintiff's negligence was the sole cause of the injury, he could not recover. The requested instruction was given in substance. There was no error in failing to repeat the instruction.

5. Instruction No. 8 is as follows:

Instruction No. 8. "The jury are instructed that the plaintiff assumed only the risks of injury that were ordinarily incident to the employment in which he was engaged, and you are further instructed in this connection that by use of the expression 'a risk ordinarily incident to the employment' is meant a risk of injury that does not arise or grow out of any act of negligence on the part of the defendant or its servants, and that, whenever a risk is created by an act of negligence on the part of a railroad company or its employees, this is not a risk ordinarily incident to the employment. And if any injury came to plaintiff by reason of any negligence of defendant or its employees, otherwise than his own negligence, if any, this would not be a risk which he assumed as incident to his employment."

A risk of injury due to a defective condition of an engine ordered taken to the shops for repairs is an ordinary risk.

Instruction No. 9. "If the jury believe from the testimony that the plaintiff did not know that Engineer Hampson was coming with his engine, and if you further believe that, by the exercise of reasonable care, plaintiff could not have known that Hampson

was coming with his engine, then this disposes of the question of assumed risk, and you should decide this question in favor of the plaintiff. An employee assumes no risk of which he does not know, or which, by the exercise of reasonable care, he could not have known. However, he is presumed to know all ordinary visible and open risks."

Instruction No. 10. "While a servant assumes ordinary risk, he does not assume the risks arising from a sudden peril not incident to his employment, where he does not have time to exercise deliberation, which one of ordinary prudence would do when confronted with a known danger. And where a servant is injured by something not incident to his employment, but by a temporary peril to which he is exposed by the negligent act of his employer, he is entitled to recover damages from the employer on account of such injury. When a servant is employed, and the employer negligently and carelessly creates a peril at the place where the servant is at work, and the servant injured thereby, then the servant will be entitled to recover for such injury."

By the other portion of the defendant's requested instruction 11a the court was asked to charge the jury that under the undisputed evidence the plaintiff's violation of rule 882 was the cause or partly the cause of the accident. The situation as disclosed by the record is this: Plaintiff contended that while he was exercising proper care and had no knowledge that engine 533 had steam enough to be moved, or that it was contemplated by anyone, to move the same on to the main line, with a block signal, indicating danger, between his engine and the switch, Engineer Hampson carelessly ran said engine out on to the main line without any headlight, negligently failed to observe the signal of Fulton to stop, passed the block signal, and violently ran against the plaintiff's engine without warning, when he should have seen the plaintiff's

torchlight and exercised proper care; that in so doing Hampson violated the rules of the company above set forth; that the proper way would have been for Hampson to have stopped when Fulton signaled and to have backed his engine up with the cars where plaintiff's engine should have been coupled. There was a controversy, not only as to how the work was done, but as to how it should have been done. Under all the circumstances, it was for the jury to determine from the evidence whether or not the plaintiff was negligent, and, if so, to what extent such negligence contributed to the alleged injury: *New York C. & St. L. R. Co.* v. *Niebel,* 214 Fed. 952.

6. The Federal Employers' Liability Act (35 Stat. 65, c. 149), and the amendment of April 5, 1910 (36 Stat. 291, c. 143), provide that in certain cases a common carrier by railroad, engaged in interstate commerce, shall be liable for an injury of an employee suffered while engaged in such commerce and "resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances," etc. They further enact that, in all actions under the act for injuries to an employee, "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee"; this except in a case of violation by such common carrier of any statute enacted for the safety of employees. Contributory negligence being only a partial defense, it is then necessary, in a case otherwise proper, to submit the matter of contributory negligence of the plaintiff to the jury

74 Or.—21

in order that the same may be compared with the negligence of the defendant and the damages apportioned as the negligence of each caused the injury, and diminished accordingly: *Norfolk & W. Ry. Co.* v. *Earnest,* 229 U. S. 114 (Ann. Cas. 1914C, 172, 57 L. Ed. 1096, 33 Sup. Ct. Rep. 654). This law lessens the necessity, which prevailed before its enactment, for the court to declare, as a matter of law, when the plaintiff is guilty of contributory negligence. This prerogative should be exercised by a trial court only in a case where it is plain that, from all the evidence and circumstances, only one conclusion could be reasonably deduced, namely, that the plaintiff was at fault in such respect and thereby contributed to his injury. As we have indicated, we think the evidence upon this point discloses a case to be submitted to the jury for its determination under proper instructions as to the law.

7, 8. The next assignment of error presented involves the proposition that the defendant is not liable for an injury sustained by the plaintiff in his participation in a train movement destined to take a defective engine to the terminal for repairs, where the injury is caused by such defects; that is, if the injury was occasioned by a lack of steam and headlights of engine 533, moved by Hampson.

In *Southern Ry. Co.* v. *Lyons,* 169 Fed. 557, 560 (25 L. R. A. (N. S.) 335, 338, 95 C. C. A. 55, 58), it is stated:

"The doctrine which requires the master to furnish reasonably safe and suitable machinery, tools, appliances, premises and the like, to the employee, is without application to cars and engines being moved to the repair shops for the purpose of complying with the rule that they be rendered safe and suitable.* * *"

In *Houston etc. Ry. Co.* v. *O'Hare,* 64 Tex. 603, Mr. Justice STAYTON, speaking for the court, says:

"That a railway company would not be liable to an employee engaged in running an engine for repair to such place as might be necessary, if the employee knew of the defects which made repair necessary, is certainly true, for in such case the employee would be held to have assumed the ordinary risks resulting from such defects. * * "

In *Flannagan* v. *Chicago & N. W. Ry. Co.,* 50 Wis. 462 (7 N. W. 337), is found an extended statement of the rule as follows:

"Cars and engines are frequently damaged, and it becomes necessary to remove them to some proper place for repairs; and it may happen that they are so seriously damaged that their removal will be attended with some personal danger to those engaged in the work.   Yet this is one of the perils of the business, and if a person so employed is injured, because of the broken and unsafe condition of the car or engine, he has no remedy against the owner, unless such owner has been otherwise negligent."

. See, also, *Brasel* v. *Oregon R. & N. Co.,* 54 Or. 157 (102 Pac. 726); *Yeaton* v. *Boston & L. R. Corp.,* 135 Mass. 418; *Chicago & N. W. Ry. Co.* v. *Ward,* 61 Ill. 130; *Holden* v. *Fitchburg Ry. Co.,* 129 Mass. 268 (37 Am. Rep. 343).

A servant who engages in the work of bringing back to a safe condition any part of the plant which has become abnormally dangerous assumes all the risks which are obviously incident to the work thus undertaken: 3 Labatt's Master & Servant, § 1166.   In other words, a servant put to work to repair a defective appliance cannot be heard to complain of its being defective, "inasmuch as that very thing is the cause of his being there, and he undertook to set it right, be-

ing paid for the risk he ran, and voluntarily incurring it": 3 Labatt's Master & Servant (2 ed.), § 1176. See, also, *Tobler* v. *Pioneer Min. & Mfg. Co.*, 166 Ala. 482 (52 South. 86); *White* v. *Thomasville L. & P. Co.* 151 N. C. 356 (66 S. E. 210).

In the case at bar the trial court, evidently having in view the rule referred to, after stating in detail to the jury that if they found the circumstances as enumerated (instruction 16, defendant's request No. 4), instructed them that if one of plaintiff's crew signaled to Engineer Hampson to move his engine out on to the main line and couple with plaintiff's engine, "and if from the evidence you find that Engineer Hampson obeyed that signal and moved out on to the main line in an ordinary way, and in the manner which a prudent engineer would do, then I charge you that, with respect to his coming out upon the main line or moving his engine without a headlight, he is not guilty of negligence, and the defendant cannot be held liable on that account; that is, on account of coming out on the main track." By this instruction the matter of the moving engine 533 by Hampson, as submitted to the jury, seems to have been confined to the manner of running the engine. Obviously the defective condition of the engine would not be an excuse for Hampson, the defendant's engineer, to run the engine out upon the main line in a careless, negligent manner, or to fail to observe the rules in regard to signals, or render it necessary to run the engine violently against engine 544, so as to brake the same. One of the questions for the jury to determine was whether or not engine 533 was capable of generating sufficient steam to run the engine, without cars attached, and at the same time furnish steam to run the dynamo and supply electricity for electric headlights. If this could have been done

conveniently, then the defect or weakness of the engine was not the real cause of the lack of regular headlights. The rule invoked applies where the injury is caused by the defective condition of an engine while running the same to a place for the purpose of repairs. It does not apply to other negligence of the defendant: *Flannagan* v. *Chicago & N. W. R. Co.,* 50 Wis. 462 (7 N. W. 337). It was shown by the evidence that, soon after the Hampson engine 533 was attached to the train, its headlights were turned on by Fulton or some one of the crew; therefore there was a question as to the extent of the defect of the engine, or whether the defect prevented supplying the lights when the engine was run upon the main line. In other words, the evidence disclosed that, while engine 533 was not considered capable of proceeding on its run, it did have some steam.

9. It is urged that under these circumstances the court should have charged the jury as per defendant's request 8, as follows:

"I further instruct you, as a matter of law, that it was not negligence or want of ordinary care in Engineer Hampson to bring his engine out to the main line without his headlight being lighted, in response to a signal to do so by the brakeman of Engineer Pfeiffer's train, who was in charge of and operating the switch at that point."

This request ignores the manner in which the engine was run by Hampson, and his other alleged negligent acts, and would not submit to the jury the question of whether or not there was sufficient steam to run the dynamo and supply the electricity for the headlights, or allow the jury to determine from the evidence, under all the circumstances, whether, under the rules of the company, the headlights should have been

lighted.  By instruction 11 (plaintiff's request No. 17), the court submitted to the jury the question of whether or not Hampson was guilty of negligence, which was the proximate cause of the injury, in failing to have said headlight burning.  While the instruction is somewhat general, we fail to see any reason why it would not be understood by the jury.

10. The defendant contends that, under the authorities, it was not negligence for the headlight to be blind. This, however, as we have indicated, depends upon a question of fact as to the condition of engine 533 for supplying sufficient power for the dynamo.  The company is liable for an injury to an employee resulting from a defect or insufficiency due to its negligence in its cars, engine and appliances, etc.: *Choctaw O. & G. R. R. Co.* v. *McDade*, 191 U. S. 64 (48 L. Ed. 96; 24 Sup. Ct. Rep. 24); *Seaboard Air Line Ry. Co.* v. *Horton*, 233 U. S. 492 (58 L. Ed. 1062, 34 Sup. Ct. Rep. 635).

A careful reading of the whole charge given by the trial court to the jury, which included many requested instructions prepared with great care by the learned counsel for defendant, leads us to believe that the questions of fact were fairly submitted to the jury. It was for the jury to determine from the evidence, under all the circumstances, whether or not the negligence of defendant in whole or in part caused the injury complained of.

Finding no reversible error in the record, the judgment of the lower court is affirmed.

Affirmed.   Rehearing Denied.